# EXHIBIT A

**CM-010**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>─ Clark R. Conforti, Esq. (SBN: 317698)<br>Kazerouni Law Group, APC<br>245 Fischer Avenue, Unit D1<br>Costa Mesa, CA 92626 | **FOR COURT USE ONLY** |

TELEPHONE NO.: 800-400-6808    FAX NO.: 800-520-5523

ATTORNEY FOR *(Name):* Plaintiff Ashley Nichols

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego

STREET ADDRESS: 330 West Broadway

MAILING ADDRESS:

CITY AND ZIP CODE: San Diego, CA 92101

BRANCH NAME: Hall of Justice

**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**10/18/2019** at 11:30:33 AM<br>Clerk of the Superior Court<br>By Megan Dietenhofer, Deputy Clerk

CASE NAME:
Ashley Nichols v. Assurance IQ Inc.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER:<br>37-2019-00055550-CL-MC-CTL |
|---|---|---|---|
| ☐ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☑ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: Judge Richard E. L. Strauss<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☑ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ☐ Substantial amount of documentary evidence
   - d. ☐ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☐ punitive
4. Number of causes of action *(specify):* 1; Violations of Cal. Bus. & Prof. Code § 17529.5
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 10/18/2019

Clark R. Conforti, Esq.
_____
(TYPE OR PRINT NAME)     ▶     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.**  If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1.  This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet.  In item 1, you must check **one** box for the case type that best describes the case.  If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below.  A cover sheet must be filed only with your initial paper.  Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.**  A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit.  A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading.  A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.**  In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

**CM-010 [Rev. July 1, 2007]**

**CIVIL CASE COVER SHEET**

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br><br>ASSURANCE IQ, INC., a Washington corporation, d/b/a MedicarePlan.com; and DOES 1-100, inclusive<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>ASHLEY NICHOLS, an individual | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**10/18/2019** at 11:30:33 AM<br>Clerk of the Superior Court<br>By Megan Dietenhofer, Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es)* Superior Ct. of CA, County of San Diego<br><br>330 West Broadway<br>San Diego, CA 92101 | **CASE NUMBER:**<br>*(Número del Caso):* 37-2019-00055550-CL-MC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Clark R. Conforti, Kazerouni Law Group, APC, 245 Fischer Ave, Unit D1, Costa Mesa, CA 92626
800-400-6808

| DATE:<br>*(Fecha)* 10/21/2019 | Clerk, by<br>*(Secretario)* ___ M. Dietenhofer | , Deputy<br>*(Adjunto)* ___ |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**[SEAL]**

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov

1

**KAZEROUNI LAW GROUP, APC**
Clark R. Conforti, Esq. (SBN: 317698)

2

clark@kazlg.com
245 Fischer Avenue, Unit D1

3

Costa Mesa, CA 92626

4

Telephone: (800) 400-6808
Facsimile: (800) 520-5523

5

6

*Attorneys for Plaintiff,*
Ashley Nichols

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego
**10/18/2019** at 11:30:33 AM
Clerk of the Superior Court
By Megan Dietenhofer,Deputy Clerk

7

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## COUNTY OF SAN DIEGO (LIMITED JURISDICTION)

10

11

**ASHLEY NICHOLS, an individual,**

Plaintiff,

12

v.

13

**ASSURANCE IQ, INC., a Washington corporation, d/b/a MedicarePlan.com; and DOES 1-100, inclusive,**

14

15

Defendants.

16

17

18

Case No.:  37-2019-00055550-CL-MC-CTL

**COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**

**[LIMITED JURISDICTION: AMOUNT UP TO $10,000]**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

## I. <u>INTRODUCTION</u>

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* California Business & Professions ("Bus. & Prof.") Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem. California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." Bus. & Prof. Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley*. 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).

## II. <u>SUMMARY OF THE COMPLAINT</u>

5. Plaintiff ASHLEY NICHOLS ("Plaintiff") brings this Action against Defendant ASSURANCE IQ, INC. doing business as *MedicarePlan.com* ("Defendant") and DOES 1-100 (collectively, "Defendants") for advertising in *at least* two (2) unsolicited commercial emails[1] (*i.e.*, "spams") sent to Plaintiff's California email address beginning

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

on or about November 2018 in violation of Bus. & Prof. Code § 17529.5 ("Section 17529.5").

6.    The spam e-mails sent by Defendant and Defendant's marketing agents materially violated Bus. & Prof. Code § 17529.5 because there was materially false and deceptive information contained in or accompanying the e-mail headers, specifically the use of third-party domain names in the Sender E-mail Address of each of the spam e-mails.

7.    Specifically, the spam e-mails violate Section 17529.5(a)(1) because they contain or are accompanied by a third-party domain name without the permission of the third party. The third-party domain names used are *craigslist.org* and *target.com*.

8.    While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

9.    All of the offending spam e-mails were sent to a California e-mail address. [2]

10.   Plaintiff never gave "direct consent" [3] as required by Bus. & Prof. Code § 17529.1(d) to receive commercial e-mail advertisements from, or had a "preexisting or current business relationship" [4] pursuant to Bus. & Prof. Code § 17529.1(*l*) with Defendant.

11.   Defendant is strictly liable for advertising in spams sent by its third-party marketing agents, as are the marketing agents themselves. Third-party marketing agents are also liable.

---

consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(o)(1)-(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative. Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. Bus. & Prof. Code § 17529.1(*l*).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

12. Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spams. *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

13. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

14. This Court should award Plaintiff liquidated statutory damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

15. This Court should award Plaintiff attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).

### III. PARTIES

#### A. Plaintiff ASHLEY NICHOLS

16. Plaintiff is now, and at all times relevant has been, an individual domiciled in the State of California, County of San Diego.

17. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California.

18. Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address *anichols****@yahoo.com.*[5]

19. Plaintiff ordinarily accesses this e-mail account from California.

20. Plaintiff is a "recipient"[6] as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

---

[5] Plaintiff's e-mail address has been partially redacted for privacy and will be made available to Defendant(s) when an appearance is made in this matter.

[6] "Recipient" means the addressee of an unsolicited commercial e-mail advertisement. If an addressee of an unsolicited commercial e-mail advertisement has one or more e-mail addresses to which an unsolicited commercial e-mail advertisement is sent, the addressee shall be deemed to be a separate recipient for each e-mail address to which the e-mail advertisement is sent. *See* Bus. & Prof. Code § 17529.1(m).

21.  Plaintiff received unlawful unsolicited commercial emails (defined above as "spams") linking to Defendant's web page at *MedicarePlan.com*. Plaintiff did not give direct consent to any of the Defendants to send Plaintiff any commercial email advertising.

**B.  Defendant ASSURANCE IQ, INC.**

22.  Plaintiff is informed and believes and thereon alleges that Defendant is currently, and was at all relevant times, a Washington corporation headquartered in the city of Bellevue, Washington.

23.  Plaintiff is informed and believes and thereon alleges that Defendant currently, and at all times, owned and operated the website *MedicarePlan.com*. Through this website, Defendant operates its business model.

24.  Defendant is an "advertiser" as defined by Bus. & Prof. Code § 17529.1(a) in each of the e-mails received by Plaintiff.

**C.  DOE Defendants**

25.  Plaintiff does not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

26.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiff complains.

27.  Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this Complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiff will seek to amend this Complaint to allege their identity and involvement with particularity.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

### IV.  **JURISDICTION AND VENUE**

28.   This Court has jurisdiction over the Action because Plaintiff is domiciled in and a citizen of California, and Plaintiff received the unlawful spams in California.

29.   Plaintiff is a California resident who received the emails in California and has thus been harmed in California.

30.   Defendant is a business based in Woodland Hills, California.

31.   The amount in controversy does not exceed $25,000.

32.   Plaintiff is informed and believes and thereon alleges that Defendant advertised in numerous spam emails sent to California residents, including Plaintiff.

33.   Plaintiff is informed and believes and thereon alleges that Defendant hired, conspired, partnered or joint ventured with unknown third parties to send these spam emails to California residents, including Plaintiff, in order to advertise its products and/or services.

34.   Plaintiff is informed and believes and thereon alleges that Defendant was aware or should have been aware that its agents, co-conspirators, partners, joint venturers were sending spam emails advertising their services to California residents.

35.   Plaintiff is informed and believes and thereon alleges that Defendant created and engaged in an ongoing relationship in California related to the distribution of the spam emails.

36.   Plaintiff is informed and believes and thereon alleges that Defendant caused to be sent numerous spam emails to the email servers of Yahoo! Inc. Yahoo! Inc. is a Delaware Corporation with email servers in Sunnyvale, California.

37.   Venue is proper in San Diego County because Plaintiff received the unlawful spams at issue in San Diego County. Thus, the cause of action arose in San Diego County.  Code Civ. Proc. §§ 395 (b) and 395.5.

> For purposes of laying venue, a liability 'arises' where the injury occurs. . . . The 'obligation or liability' provision of section 395.5 does *not* require that the defendant perform any act inside the county for venue to be proper; it merely requires that *the obligation arise there.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

*Black Diamond Asphalt Inc. v. Superior Court of San Joaquin* County, 109 Cal. App 4th 166, 172, 173 (3d Dist. 2003) (internal citations omitted, emphasis added). Here, Defendant's obligations arose in San Diego County, where Plaintiff received the spams.

### V. <u>TECHNICAL BACKGROUND</u>

38.   "A 'domain name' is defined by an 'alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet.'" *Balsam v. Trancos, Inc*., 203 Cal.App.4th 1083, 1090 fn. 6 (quoting Bus. & Prof. Code § 17529.1 subd. (e)).

39.   "WHOIS" refers to the means of determining the identity of a domain registrant. "Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name." *Solid Host NL v. NameCheap, Inc.*, 652 F.Supp. 2d 1092, 1095 fn. 3 (C.D.Cal. 2009) (citing Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'Y 279, 313 (2005)).

40.   "To secure the creation, registration, and use of a domain name, one must first assent to the registrar's contract. In addition to the payment of a small fee, the contract requires a potential registrant to agree to (1) provide and maintain current and accurate identifying information…" *In re Forchion*, 198 Cal.App.4th 1284, 1308-09 (2011).

### VI.  <u>THE TWO UNLAWFUL SPAMS</u>

41.   Plaintiff alleges that Defendant engaged in tortious conduct: "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." *Tort*, BLACK'S LAW DICTIONARY (11th ed. 2019).

A. <u>The Emails at Issue are Unsolicited Commercial E-Mail Advertisements (*i.e.* "Spam")</u>

42.   Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

43. Plaintiff received *at least* two (2) spams advertising Defendant's websites at Plaintiff's California e-mail address.

44. The e-mails at issue are "commercial e-mail advertisements" [7] because they advertise services provided by Defendant at the website *MedicarePlan.com* and were initiated for the purpose of advertising and promoting Defendant's products or services.

45. The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiff never gave "direct consent" to Defendant, or any of its affiliates to send commercial e-mails.

46. Plaintiff has never had a "preexisting or current business relationship" with Defendant, or its affiliates.

47. Plaintiff did not opt-in to receive e-mails from Defendant's marketing agents. Even *if* Plaintiff had opted in to receive e-mails from Defendant's marketing agents—which Plaintiff denies—that would not constitute *direct* consent to Defendant, the advertiser in the spams. *See Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1099-1100 (1st Dist. 2012).

48. Plaintiff did not consent or acquiesce to receive the spams at issue. Plaintiff did not waive any claims related to the spams at issue.

49. Defendant advertised in, sent, and/or conspired to send *at least* two (2) unlawful spams that Plaintiff received at Plaintiff's "California e-mail address."

50. The spams are all unlawful because the spams contain or are accompanied by materially false and deceptive information, such as the use of third-party domain names without the third party's permission, and/or falsified, misrepresented, or forged information contained in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

//

//

//

//

---

[7] "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit. Bus. & Prof. Code § 17529.1(c).

**B. <u>The Spam E-mails Contain or Are Accompanied By Third-Party Domain Names</u>**
**<u>Without The Permission of the Third Party in Violation of Business & Professions</u>**
**<u>Code § 17529.5(a)(1)</u>**

51.  Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

52.  The two (2) spam e-mails received by Plaintiff Nichols contain third-party domain names in the From field in each of the spam e-mails. These From fields were all forged to falsely include the third-party domain names in the Sender E-mail Addresses. The forged Sender E-mail Addresses are *orders@oe.target.com* and *help@craigslist.org*.

53.  These third-party domain names were contained in the Sender E-mail Address field in each of the spam e-mail headers.

54.  The "From" line field is part of e-mail headers. The From line has two distinctive parts: (1) the From Name, and (2) the Sender E-mail Address. For example, if an e-mail's "From" 'line states: "John Doe <johndoe@yahoo.com>", the From Name is "John Doe" and the Sender E-mail Address is "<johndoe@yahoo.com>."

55.  The From Name in an e-mail's header is designed to identify *who* the e-mail is from. The Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules and standard protocols that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

56.  The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a deliberate and material misrepresentation of the most important part of the e-mail header—not a mere clerical error.

57.  Although Plaintiff *does not* bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From*," "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message*." Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business (emphasis added).[8]

58. Plaintiff does not insist on any particular label in the From Name field. Rather, Plaintiff contends that the text of a From Name field, whatever it is, cannot misrepresent *who* the e-mails are from.

59. Plaintiff is informed and believes and thereon alleges that the emails at issue here falsely list domain names owned by third parties without the permission of the third parties.

60. Plaintiff is informed and believes and thereon alleges that Defendants use third-party domain names to deceive recipients into believing that these third parties have endorsed or approved of Defendant's products and/or services.

61. Plaintiff is informed and believes and thereon alleges that Defendants use these third-party domain names to use the good will of these third parties to trick the recipients into opening the emails and purchasing Defendant's products and/or services.

62. *Craigslist.org* is contained in one of the spam e-mails at issue. Plaintiff is informed and believes and thereon alleges that third party Craigslist, Inc. did not give permission for its domain name *craigslist.org* to appear in or accompany any of the spams at issue in this complaint.

63. *Target.com* is contained in one of the spam e-mails at issue. Plaintiff is informed and believes and thereon alleges that third party Target Brands Inc. did not give permission for its domain name *Target.com* to appear in or accompany one of the spams at issue in this complaint.

64. Plaintiff could see the third parties' domain names when Plaintiff viewed the spam e-mails on Plaintiff's computer.

---

[8] http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business

65. There is no readily discernible connection between the above entities and Defendant and no evidence that these entities consented to Defendant's use of their domain names in connection with the sending of the emails at issue, in violation of Section 17529.5(a)(1). Nothing indicates that these third parties use affiliate marketers or have an affiliate program for advertising business for other websites, such as Defendant's websites.

66. Such unauthorized use of third parties' domain names without permission is materially false and deceptive. Plaintiff is informed and believes and thereon alleges that Defendant and/or its marketing agents included the third-party domain names in order to: falsely lend an air of legitimacy to the spams by leveraging the brand equity of legitimate advertisers, making the recipients believe that the third-party endorses Defendant; and trick recipients and e-mail filters as to the source of the spam e-mails. If Defendant and its marketing agents used their own domain names, it would be more likely that spam filters and recipients would be able to identify the domain names as being associated with spammers, and block or disregard the spams. On the other hand, e-mails purportedly sent by the third party are more likely to be treated as legitimate e-mails and not spams, and therefore not blocked by e-mail filters or disregarded by recipients.

67. The unsolicited commercial emails Plaintiff received from Defendant violate Section 17529.5(a)(1) because the e-mail advertisements contain or are accompanied by a third-party's domain name without the permission of the third party, which misrepresents the identity of the sender, misappropriates the identity of the true owner of the third-party domain name, and falsely represents that the sender has a legitimate relationship with the third-party domain name's true owner.

68. Moreover, the emails Plaintiff received did not actually come from the purported domain names, and thus contain materially false, forged, deceptive, or misleading information in violation of Section 17529.5. *See Silverstein v. Keynetics, Inc.*, 2016 U.S. Dist. LEXIS 180174 (N.D. Cal. 2016).

69. The emails Plaintiff received were also materially false and deceptive because they were falsified, forged, or misrepresented to indicate that the sender was an actual entity known

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

to Plaintiff, when the emails were, in fact, nothing but advertisements sent by Defendant or its agents. *See Hoang v. Reunion.com, Inc.*, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. 2010).

70.  Furthermore, since these spam e-mails were not actually sent from the domain names that appear in the Sender E-mail Addresses, the spam e-mails misrepresented the sender of the spam e-mails through the use of falsified and forged information.

**C. Defendant is Strictly Liable for the Spam E-mails Sent By its Marketing Agents**

71.  Plaintiff is informed and believes and thereon alleges that Defendant contracted with third-party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

72.  Defendant knowingly, intentionally, and voluntarily chose to outsource their advertising to third-party spam networks and spammers.

73.  Advertisers are liable for advertising in spam e-mails, even if third parties sent the e-mails:

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." (Bus. & Prof. Code § 17529(j)(k).) "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…"

Bus. & Prof. Code § 17529.5 (emphasis added). Thus, Defendant's agents are also liable for sending the unlawful spams.

74.  Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added).

75.  In fact, in *Hypertouch*, the court of appeal held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third-parties.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

*[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3)*. Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.

Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

*Id.* at 820-21. The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute. *Id.* at 829.

76.    Moreover, Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in third-party domain names, From Names, domain name registrations, and Subject Lines, as described herein.

77.    Forged Sender E-mail Addresses do not write themselves. The false and misrepresented information contained in and accompanying the e-mail headers are not "clerical errors." Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to materially deceive recipients, Internet Service Providers, and spam filters.

78.    Plaintiff is informed and believes and thereon alleges that Defendant has knowledge that its affiliates/marketing agents engage in the sending of false and deceptive spam. Plaintiff is informed and believes and thereon alleges that Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by, its wrongful conduct as described herein.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**D. No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Sues for Statutory Liquidated Damages**

79. The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

80. Plaintiff is informed and believes and thereon alleges that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

81. Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

82. Section 17529.5 does not require Plaintiff to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

83. However, Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California e-mail addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiff does not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

84. Plaintiff is informed and believes and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

**FIRST CAUSE OF ACTION**
**[Violations of California Restrictions on Unsolicited Commercial E-mail,  California Business & Professions Code § 17529.5]**
**(Against All Defendants)**

85. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

86.  Plaintiff received the spam e-mails within one year prior to filing this Complaint.

87.  Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent *at least* two (2) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses and California Class members' e-mail addresses that had materially falsified, forged and/or misrepresented information contained in or accompanying the e-mail headers, and third-party domain names without the permission of the third party, in violation of Bus. & Prof. Code § 17529.5.

88.  Plaintiff is informed and believes and thereon alleges that all of the emails use hypertext markup language ("HTML") in the body which reference remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Many email clients automatically block remote images preventing recipients from seeing the sender upon initially opening the email.

89.  Remote images are not actually part of the email body, but rather a link to a web server that could be anywhere on the Internet and controlled by Defendant or an unknown third party. *See ZooBuh, Inc. v. Better Broadcasting, LLC* 2013 U.S. Dist. LEXIS 77033 *22 n. 29 (D. Utah 2013).

90.  Some spammers use remote hosted images to detect when emails are opened to detect active email addresses so that the spammer can either resell the email address and/or direct more emails to active email addresses which open emails.

91.  Plaintiff is informed and believes and thereon alleges that most email clients, including Plaintiff's, automatically block remote hosted images in spam as a security measure to prevent spammers from detecting active email addresses.

92.  The use of remote hosted images permits the senders to make the emails "self-destructing" in order to hide the identities of the Defendant and to avoid responsibility for Defendant's deliberately misleading unsolicited email advertisements and illegal activities.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

93.   The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

94.   The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per e-mail.

95.   Plaintiff seeks reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

96.   The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.

- Liquidated damages of $2,000 against Defendant in the amount of $1,000 per each of the two (2) unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

- Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

- Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

- Costs of suit.

- Such other and further relief as the Court deems proper.

## DEMAND FOR JURY TRIAL

97.     Pursuant to the California Constitution and California Code of Civil Procedure § 631, Plaintiff is entitled to, and demands, a trial by jury.

Dated: October 18, 2019                    Respectfully submitted,

                                           **KAZEROUNI LAW GROUP, APC**

                                           By:  _____
                                                CLARK R. CONFORTI, ESQ.
                                                *Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | |
|---|---|
| STREET ADDRESS: | 330 W Broadway |
| MAILING ADDRESS: | 330 W Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101-3827 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 450-7075 |

| PLAINTIFF(S) / PETITIONER(S): | Ashley Nichols |
|---|---|

| DEFENDANT(S) / RESPONDENT(S): | Assurance IQ Inc |
|---|---|

NICHOLS VS ASSURANCE IQ INC [IMAGED]

| **NOTICE OF CASE ASSIGNMENT** **and CASE MANAGEMENT CONFERENCE** | CASE NUMBER: 37-2019-00055550-CL-MC-CTL |
|---|---|

## CASE ASSIGNED FOR ALL PURPOSES TO:

Judge:  Richard E. L. Strauss                                     Department: C-75

**COMPLAINT/PETITION FILED:** 10/18/2019

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 07/31/2020 | 10:00 am | C-75 | Richard E. L. Strauss |

A case management statement must be completed by counsel for all parties or self-represented litigants and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR* options.

IT IS THE DUTY OF EACH PLAINTIFF (AND CROSS-COMPLAINANT) TO SERVE A COPY OF THIS NOTICE WITH THE COMPLAINT (AND CROSS-COMPLAINT), THE ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION FORM (SDSC FORM #CIV-730), A STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR) (SDSC FORM #CIV-359), AND OTHER DOCUMENTS AS SET OUT IN SDSC LOCAL RULE 2.1.5.

ALL COUNSEL WILL BE EXPECTED TO BE FAMILIAR WITH SUPERIOR COURT RULES WHICH HAVE BEEN PUBLISHED AS DIVISION II, AND WILL BE STRICTLY ENFORCED.

TIME STANDARDS: The following timeframes apply to general civil cases and must be adhered to unless you have requested and been granted an extension of time.  General civil cases consist of all civil cases except: small claims proceedings, civil petitions, unlawful detainer proceedings, probate, guardianship, conservatorship, juvenile, parking citation appeals, and family law proceedings.

COMPLAINTS: Complaints and all other documents listed in SDSC Local Rule 2.1.5 must be served on all named defendants.

DEFENDANT'S APPEARANCE: Defendant must generally appear within 30 days of service of the complaint.  (Plaintiff may stipulate to no more than 15 day extension which must be in writing and filed with the Court.) (SDSC Local Rule 2.1.6)

JURY FEES: In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

COURT REPORTERS: Court reporters are not provided by the Court in Civil cases. See policy regarding normal availability and unavailability of official court reporters at www.sdcourt.ca.gov.

*ALTERNATIVE DISPUTE RESOLUTION (ADR):  THE COURT ENCOURAGES YOU TO CONSIDER UTILIZING VARIOUS ALTERNATIVES TO TRIAL, INCLUDING MEDIATION AND ARBITRATION, PRIOR TO THE CASE MANAGEMENT CONFERENCE. PARTIES MAY FILE THE ATTACHED STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (SDSC FORM #CIV-359).



# Superior Court of California
# County of San Diego

# NOTICE OF ELIGIBILITY TO eFILE
# AND ASSIGNMENT TO IMAGING DEPARTMENT

**This case is eligible for eFiling. Should you prefer to electronically file documents, refer to General Order in re procedures regarding electronically imaged court records, electronic filing, and access to electronic court records in civil and probate cases for rules and procedures or contact the Court's eFiling vendor at www.onelegal.com for information.**

**This case has been assigned to an Imaging Department and original documents attached to pleadings filed with the court will be imaged and destroyed.  Original documents should not be filed with pleadings.  If necessary, they should be lodged with the court under California Rules of Court, rule 3.1302(b).**

On August 1, 2011 the San Diego Superior Court began the Electronic Filing and Imaging Pilot Program ("Program").  As of August 1, 2011 in all new cases assigned to an Imaging Department all filings will be imaged electronically and the electronic version of the document will be the official court file.  The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and on the Internet through the court's website.

You should be aware that the electronic copy of the filed document(s) will be the official court record pursuant to Government Code section 68150.  The paper filing will be imaged and held for 30 days.  After that time it will be destroyed and recycled.  **Thus, you should not attach any original documents to pleadings filed with the San Diego Superior Court. Original documents filed with the court will be imaged and destroyed except those documents specified in California Rules of Court, rule 3.1806.**  Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant or petitioner to serve a copy of this notice with the complaint, cross-complaint or petition on all parties in the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words **"IMAGED FILE"** in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Clark R. Conforti, Esq. (SBN: 317698)<br>Kazerouni Law Group, APC<br>245 Fischer Ave., Ste. D1<br>Costa Mesa, CA 92626 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (800) 400-6808      FAX NO.(Optional): (800) 520-5523<br>EMAIL ADDRESS (Optional): clark@kazlg.com<br>ATTORNEY FOR (Name): Plaintiff Ashley Nichols | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br>**10/22/2019** at 09:21:00 AM<br>Clerk of the Superior Court<br>By Jessica Pascual, Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
☒ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, KEARNY MESA, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123
☐ CENTRAL DIVISION, JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

| PLAINTIFF(S)/PETITIONER(S)<br>Ashley Nichols | |
|---|---|
| DEFENDANT(S)/RESPONDENT(S)<br>Assurance IQ, Inc., et al. | JUDGE<br>Hon. Richard E.L. Strauss |
| IN THE MATTER OF<br>Nichols v. Assurance IQ, Inc., et al. | DEPT<br>C-75 |
| **PEREMPTORY CHALLENGE** | CASE NUMBER<br>37-2019-00055550-CL-MC-CTL |

Clark R. Conforti _____, is ☐ a party ☒ an attorney for a party in the

above-entitled case and declares that Hon. Richard E.L. Strauss _____, the judicial officer to

whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's

attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such

judicial officer.

WHEREFORE, pursuant to the provisions of Code Civ. Proc. §170.6, I respectfully request that this court issue its order

reassigning said case to another, and different, judicial officer for further proceedings.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/21/2019 _____

_____
Signature

---

**ORDER**

☑ GRANTED – The court finds the challenge is timely filed and the party's/attorney's above statement meets the requirements of Code Civ. Proc. §170.6 (a)(4). The case will be reassigned and a notice will be mailed to the parties and/or counsel.

☐ DENIED

**IT IS SO ORDERED.**

Date: **10-22-19** _____

_____
Judge/~~Commissioner~~ of the Superior Court
**Richard E.L. Strauss**

Date: ____10-22-19____      Case is reassigned to Judge/~~Commissioner~~ __Kenneth Medel__

| SDSC ADM-381 (New 6/19) | **PEREMPTORY CHALLENGE** | Code Civ. Proc. § 170.6 |
|---|---|---|

| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO** | *FOR COURT USE ONLY* |
|---|---|
| STREET ADDRESS:  330 West Broadway<br>MAILING ADDRESS:  330 West Broadway<br>CITY AND ZIP CODE:  San Diego, CA 92101<br>BRANCH NAME:  Central<br>TELEPHONE NUMBER:  (619) 450-7066 | |

| PLAINTIFF: Ashley Nichols |
|---|
| DEFENDANT: Assurance IQ Inc |
| Short Title: Nichols vs Assurance IQ Inc [IMAGED] |

| **NOTICE OF CASE REASSIGNMENT** | CASE NUMBER:<br>37-2019-00055550-CL-MC-CTL |
|---|---|

**Filed :**  10/18/2019

**EFFECTIVE IMMEDIATELY, THE ABOVE-ENTITLED CASE HAS BEEN REASSIGNED FOR ALL PURPOSES:**

to Judge Kenneth J Medel, in Department C-66

due to the following reason:   170.6


All subsequent documents filed in this case must include the name of the new judge and the department number on the first page immediately below the number of the case. All counsel and self-represented litigants are advised that Division II of the Superior Court Rules is strictly enforced. It is the duty of each plaintiff (and cross-complainant) to serve a copy of this notice with the complaint (and cross-complaint).


ANY NEW HEARINGS ON THIS CASE WILL BE SCHEDULED BEFORE THE NEW JUDICIAL OFFICER

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Nichols vs Assurance IQ Inc [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: **37-2019-00055550-CL-MC-CTL** |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF CASE REASSIGNMENT was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at San Diego, California on 10/22/2019. The mailing occurred at Gardena, California on 10/23/2019.

Clerk of the Court, by: M. Bernardez                                      , Deputy

CLARK  R CONFORTI
KAZEROUNI LAW GROUP INC
245  FISCHER AVENUE # D1
COSTA MESA, CA 92626

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

STREET ADDRESS:        330 West Broadway
MAILING ADDRESS:      330 West Broadway
CITY AND ZIP CODE:     San Diego, CA 92101
BRANCH NAME:           Central
TELEPHONE NUMBER:  (619) 450-7066

PLAINTIFF(S)/PETITIONER(S)/APPELLANT(S): Ashley Nichols

DEFENDANT(S)/RESPONDENT(S): Assurance IQ Inc

Short Title: Nichols vs Assurance IQ Inc [IMAGED]

| NOTICE OF HEARING | CASE NUMBER:<br>37-2019-00055550-CL-MC-CTL |
|---|---|

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.  All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 06/19/2020 | 08:30 am | C-66 | Kenneth J Medel |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference.  (San Diego Local Rules, Division II, CRC Rule 3.725).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** Nichols vs Assurance IQ Inc [IMAGED]

| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | CASE NUMBER: |
|---|---|
| | **37-2019-00055550-CL-MC-CTL** |

I certify that I am not a party to this cause. I certify that a true copy of NOTICE OF HEARING was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The certification occurred at San Diego, California on 10/22/2019. The mailing occurred at Gardena, California on 10/23/2019.

Clerk of the Court, by: _____ , Deputy
J. Rein

CLARK  R CONFORTI
KAZEROUNI LAW GROUP INC
245  FISCHER AVENUE # D1
COSTA MESA, CA 92626

---

**CLERK'S CERTIFICATE OF SERVICE BY MAIL**

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY:<br>Clark R. Conforti, Esq.  (SBN 317698)<br>Kazerouni Law Group, APC<br>245 Fischer Ave.<br>Suite D1<br>Costa Mesa, CA 92626<br><br>  TELEPHONE NO.: (800) 400-6808     FAX NO.: (800) 525-0552<br>  ATTORNEY FOR: Ashley Nichols | FOR COURT USE ONLY<br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**12/19/2019** at 09:29:00 AM<br>Clerk of the Superior Court<br>By E- Filing,Deputy Clerk |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>  STREET ADDRESS: 330 W. Broadway<br>  MAILING ADDRESS: 330 W. Broadway<br>  CITY AND ZIP CODE: San Diego, 92101<br>  BRANCH NAME: San Diego Central - Broadway |
|---|

| PLAINTIFF: Ashley Nichols<br>DEFENDANT: Assurance IQ, Inc | CASE NUMBER:<br>37-2019-00055550-CL-MC-CTL |
|---|---|

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>Nichols v. Assurance IQ |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:
   a.  [X]  summons
   b.  [X]  complaint
   c.  [X]  Alternative Dispute Resolution (ADR) package
   d.  [X]  Civil Case Cover Sheet (served in complex cases only)
   e.  [ ]  cross-complaint
   f.  [X]  other (specify documents):
       Notice of Case Assignment and Case Management Conference; Stipulation to Use ADR; Notice of Confirmation of efiling; Peremptory Challenge

3.  a. Party served *(specify name of party as shown on documents served)*:
       Assurance IQ, Inc.. a Washington corporation, d/b/a MedicarePlan.com
    b.  [X]  Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made)
       Guliver Swenson / Chief Legal Counsel

4. Address where the party was served:
   10500 NE 8th St., Ste. 1450, Bellevue, WA 98004

5. i served the party *(check proper box)*
   a.  [X]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):*12/03/2019  (2) at *(time):* 1:28 PM
   b.  [ ]  **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

       (1)  [ ]  **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
       (2)  [ ]  **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
       (3)  [ ]  **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
       (4)  [ ]  I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where copies were left (Code Civ. Proc., 415.20). I mailed the documents on *(date):*          from *(city):*          **or** [ ]
   a declaration of mailing is attached.

Page 1 of 2

**PROOF OF SERVICE OF SUMMONS**          Job Number SNO-2019010429

1

Clark R. Conforti, Esq. (SBN: 317698)
clark@kazlg.com

2

**KAZEROUNI LAW GROUP, APC**

3

245 Fischer Ave, Suite D1
Costa Mesa, CA 92626

4

Office Number: (619) 233-7770
Office Fax Number: (619) 297-1022

5

6

*Attorneys for Plaintiff*
*Ashley Nichols*

7

8

9

10

11

12

**SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

13

**COUNTY OF SAN DIEGO**

14

15

Ashley Nichols,

**CASE NO: 37-2019-00055550-CL-MC-CTL**

16

Plaintiff,

17

v.

18

Assurance IQ Inc.,

**PROOF OF SERVICE**

19

Defendants.

20

21

22

23

24

25

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**12/19/2019** at 09:29:00 AM

Clerk of the Superior Court
By E- Filing,Deputy Clerk

*Ashley Nichols v. Assurance IQ Inc. dba MedicarePlan.com*
*Case No. 37-2019-00055550-CL-MC-CTL*
*California Superior Court — County of San Diego*

**PROOF OF SERVICE**

I, Emily Torromeo, declare as follows:

I am over the age of eighteen years and not a party to the case.  I am employed in the County of San Diego, California, where the mailing occurs. My business address is 2221 Camino del Rio South, Suite 101, San Diego, CA, 92108. I am readily familiar with our business' practice of collecting, processing, and mailing of correspondence and pleadings for mail with the United States Postal Service.

On Thursday, December 19, 2019, I served the foregoing document(s) described as:

- PROOF OF SERVICE OF SUMMONS AND COMPLAINT

On the interested parties in said case addressed as follows:

> Sarah de Diego
> **DE DIEGO LAW**
> 1320 Arizona Ave., Ste. 1
> Santa Monica, CA 90403

[X] BY MAIL, by placing a copy thereof in a separate envelope for each addressee named above, addressed to  each addressee respectively, and then sealed each envelope and, with the postage fully prepaid, deposited each in the United States mail at San Diego, California in accordance with our business' practice.

[ ] BY FACSIMILE, this document was transmitted by facsimile transmission from (619) 297-1022 and transmission was reported as complete and without error.  A copy of the transmission report is attached to this affidavit.

[ ] ELECTRONICALLY, this document was transmitted by the Internet from our office.

[ ] PERSONAL SERVICE, this document was personally delivered to the person listed above.

I declare under penalty under perjury under the laws of the State of California that the foregoing is true and correct.  Executed on December 19, 2019, at San Diego, California.

_____
Emily Torromeo

KAZEROUNI LAW GROUP, APC
San Diego, CA

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Clark R. Conforti, Esq. (SBN: 317698)
clark@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Ashley Nichols

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**12/26/2019** at 02:36:00 PM

Clerk of the Superior Court
By Linda Sheffa,Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO (LIMITED JURISDICTION)

| | |
|---|---|
| **ASHLEY NICHOLS, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ASSURANCE IQ, INC., a Washington corporation, d/b/a MedicarePlan.com; and DOES 1-100, inclusive,**<br><br>Defendants. | Case No.: 37-2019-00055550-CL-MC-CTL<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL (Cal. Bus. & Prof. Code § 17529.5)**<br><br>**[LIMITED CIVIL CASE TO BE RECLASSIFIED BY THIS PLEADING]**<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

## I. <u>INTRODUCTION</u>

1. In 2003, the California Legislature found that "[r]oughly 40 percent of all e-mail traffic in the United States is comprised of unsolicited commercial e-mail advertisements (hereafter spam) and industry experts predict that by the end of 2003 half of all e-mail traffic will be comprised of spam." *See* California Business & Professions ("Bus. & Prof.") Code § 17529(a).

2. The California Legislature also found that spam e-mails do cause damage and acknowledged the cost of spam in the United States in 2003: "According to Ferris Research Inc., a San Francisco consulting group, spam will cost United States organizations more than ten billion dollars ($10,000,000,000), including lost productivity and the additional equipment, software, and manpower needed to combat the problem.  California is 12 percent of the United States population with an emphasis on technology business, and it is therefore estimated that spam costs California organizations well over 1.2 billion dollars ($1,200,000,000)." Bus. & Prof. Code § 17529(d).

3. However, since the California Legislature declared its findings regarding the cost of spam in 2003, the actual cost has increased dramatically. In 2012, the Journal of Economic Perspectives published an academic paper which estimated that e-mail spam cost American businesses and consumers roughly $20 billion annually. *Rao, Justin M., and David H. Reiley*. 2012. "The Economics of Spam." *Journal of Economic Perspectives*, 26 (3): 87-110.

4. As of November of 2018, spam e-mail messages accounted for 54.3 percent of the total e-mail traffic worldwide. *Symantec Corporation,* Monthly Threat Report (December 2018).

## II. <u>SUMMARY OF THE COMPLAINT</u>

5. Plaintiff ASHLEY NICHOLS ("Plaintiff") brings this Class Action Complaint individually and on behalf of the putative class against Defendant ASSURANCE IQ, INC. doing business as *MedicarePlan.com* ("Defendant") and DOES 1-100 (collectively, "Defendants") for advertising in *at least* two (2) unsolicited commercial emails[1] (*i.e.*,

---

[1] "Unsolicited commercial e-mail advertisement" means that the recipient has not provided direct

**FIRST AMENDED CLASS ACTION COMPLAINT**

"spams") sent to Plaintiff's California email address beginning on or about October 2018 in violation of Bus. & Prof. Code § 17529.5 ("Section 17529.5").

6.   The spam e-mails sent by Defendant and Defendant's marketing agents materially violated Bus. & Prof. Code § 17529.5 because there was materially false and deceptive information contained in or accompanying the e-mail headers, specifically the use of third-party domain names in the Sender E-mail Address of each of the spam e-mails.

7.   Specifically, the spam e-mails violate Section 17529.5(a)(1) because they contain or are accompanied by a third-party domain name without the permission of the third party. The third-party domain names used are *craigslist.org* and *target.com*.

8.   While many violations are described below with specificity, this Complaint alleges violations of the statutes in their entirety.

9.   All of the offending spam e-mails were sent to a California e-mail address. [2]

10.  Plaintiff never gave "direct consent" [3] as required by Bus. & Prof. Code § 17529.1(d) to receive commercial e-mail advertisements from, or had a "preexisting or current business relationship" [4] pursuant to Bus. & Prof. Code § 17529.1(*l*) with Defendant.

11.  Defendant is strictly liable for advertising in spams sent by its third-party marketing agents, as are the marketing agents themselves. Third-party marketing agents are also liable.

---

consent to receive advertisements from the advertiser and does not have a preexisting or current business relationship, as defined by subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift, offer or other disposition of any property, goods, services, or extension of credit. *See* Bus. & Prof. Code § 17529.1(o)(1)-(2).

[2] "California electronic mail address" or "California e-mail address" means any of the following: (1) an e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address in this state; (2) an e-mail address ordinarily accessed from a computer located in this state; or (3) an e-mail address furnished to a resident of this state. *See* Bus. & Prof. Code § 17529.1(b).

[3] "Direct consent" means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative.  Bus. & Prof. Code § 17529.1(d) (emphasis added).

[4] "Preexisting or current business relationship," as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser.  Bus. & Prof. Code § 17529.1(*l*).

**FIRST AMENDED CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

12. Spam recipients are not required to allege or prove reliance or actual damages to have standing. *See* Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). Nevertheless, Plaintiff did suffer damages by receiving the spams. *See, e.g.,* Bus. & Prof. Code § 17529(d), (e), (g), (h). However, Plaintiff elects to recover statutory damages only and forego recovery of any actual damages. *See* Bus. & Prof. Code § 17529.5(b)(1)(B).

13. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

14. This Court should award Plaintiff liquidated statutory damages against Defendant in the amount of $1,000 per unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

15. This Court should award Plaintiff attorneys' fees pursuant to Bus. & Prof. Code § 17529.5(b)(1)(C).

16. Plaintiff brings this class action to recover statutory liquidated damages on behalf of herself as well as on behalf of other similarly situated proposed Class members.

## II. PARTIES

### A. Plaintiff ASHLEY NICHOLS

17. Plaintiff is now, and at all times relevant has been, an individual domiciled in the State of California, County of San Diego.

18. Plaintiff owns and at all relevant times herein owned a computer with an Internet connection. This computer is located in the State of California.

19. Plaintiff ordinarily uses this computer to access Plaintiff's e-mail address *anichols****@yahoo.com.*[5]

20. Plaintiff ordinarily accesses this e-mail account from California.

21. Plaintiff is a "recipient"[6] as defined by Bus. & Prof. Code § 17529.1(m) of "unsolicited commercial e-mail advertisements" as defined by Bus. & Prof. Code § 17529.1(o).

---

[5] Plaintiff's e-mail address has been partially redacted for privacy and will be made available to Defendant(s) when an appearance is made in this matter.

[6] "Recipient" means the addressee of an unsolicited commercial e-mail advertisement. If an addressee of an unsolicited commercial e-mail advertisement has one or more e-mail addresses to which an unsolicited commercial e-mail advertisement is sent, the addressee shall be deemed

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

22.   Plaintiff received unlawful unsolicited commercial emails (defined above as "spams) linking to Defendant's web page at *MedicarePlan.com.* Plaintiff did not give direct consent to any of the Defendants to send Plaintiff any commercial email advertising.

**B.   Defendant ASSURANCE IQ, INC.**

23.   Plaintiff is informed and believes and thereon alleges that Defendant is currently, and was at all relevant times, a Washington corporation headquartered in the city of Bellevue, Washington.

24.   Plaintiff is informed and believes and thereon alleges that Defendant currently, and at all times, owned and operated the website *MedicarePlan.com.* Through this website, Defendant operates its business model.

25.   Defendant is an "advertiser" as defined by Bus. & Prof. Code § 17529.1(a) in each of the e-mails received by Plaintiff.

**C.   DOE Defendants**

26.   Plaintiff does not know the true names or legal capacities of the Defendants designated herein as DOES 1 through 100, inclusive, and therefore sue said Defendants under the fictitious name of "DOE."

27.   Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for causing the injuries and damages of which Plaintiff complains.

28.   Plaintiff is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE Defendant was, at all times relevant to the matters alleged within this Complaint, acting in conjunction with the named Defendants, whether as a director, officer, employee, agent, affiliate, customer, participant, or co-conspirator. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiff will seek to amend this Complaint to allege their identity and involvement with particularity.

---

to be a separate recipient for each e-mail address to which the e-mail advertisement is sent. *See* Bus. & Prof. Code § 17529.1(m).

**FIRST AMENDED CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

### III.  **JURISDICTION AND VENUE**

29.   This Court has jurisdiction over the Action because Plaintiff is domiciled in and a citizen of California, and Plaintiff received the unlawful spams in California.

30.   Plaintiff is a California resident who received the emails in California and has thus been harmed in California.

31.   This Court has jurisdiction over the Action because Plaintiff and the proposed class are located in California, and this is a civil action wherein the matter in controversy, exclusive of interest and costs, exceeds $25,000.

32.   Plaintiff is informed and believes and thereon alleges that Defendant advertised in numerous spam emails sent to California residents, including Plaintiff.

33.   Plaintiff is informed and believes and thereon alleges that Defendant hired, conspired, partnered or joint ventured with unknown third parties to send these spam emails to California residents, including Plaintiff, in order to advertise its products and/or services.

34.   Plaintiff is informed and believes and thereon alleges that Defendant was aware or should have been aware that its agents, co-conspirators, partners, joint venturers were sending spam emails advertising their services to California residents.

35.   Plaintiff is informed and believes and thereon alleges that Defendant created and engaged in an ongoing relationship in California related to the distribution of the spam emails.

36.   Plaintiff is informed and believes and thereon alleges that Defendant caused to be sent numerous spam emails to the email servers of Yahoo! Inc. Yahoo! Inc. is a Delaware Corporation with email servers in Sunnyvale, California.

37.   Venue is proper in San Diego County because Plaintiff received the unlawful spams at issue in San Diego County. Thus, the cause of action arose in San Diego County.  Code Civ. Proc. §§ 395 (b) and 395.5.

> For purposes of laying venue, a liability 'arises' where the injury occurs. . . . The 'obligation or liability' provision of section 395.5 does *not* require that the defendant perform any act inside the county for venue to be proper; it merely requires that *the obligation arise there.*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

*Black Diamond Asphalt Inc. v. Superior Court of San Joaquin* County, 109 Cal. App 4th 166, 172, 173 (3d Dist. 2003) (internal citations omitted, emphasis added). Here, Defendant's obligations arose in San Diego County, where Plaintiff received the spams.

## IV. TECHNICAL BACKGROUND

38.   "A 'domain name' is defined by an 'alphanumeric designation that is registered with or assigned by any domain name registrar as part of an electronic address on the Internet.'" *Balsam v. Trancos, Inc.*, 203 Cal.App.4th 1083, 1090 fn. 6 (quoting Bus. & Prof. Code § 17529.1 subd. (e)).

39.   "WHOIS" refers to the means of determining the identity of a domain registrant. "Technically, WHOIS is not the database, itself, but a protocol for submitting a query to a database in order to find contact information for the owner of a domain name." *Solid Host NL v. NameCheap, Inc.*, 652 F.Supp. 2d 1092, 1095 fn. 3 (C.D.Cal. 2009) (citing Matthew Bierlin & Gregory Smith, *Privacy Year in Review: Growing Problems with Spyware and Phishing, Judicial and Legislative Developments in Internet Governance, and the Impacts on Privacy,* 1 I/S: J.L. & POL'Y FOR INFO. SOC'Y 279, 313 (2005)).

40.   "To secure the creation, registration, and use of a domain name, one must first assent to the registrar's contract. In addition to the payment of a small fee, the contract requires a potential registrant to agree to (1) provide and maintain current and accurate identifying information…" *In re Forchion*, 198 Cal.App.4th 1284, 1308-09 (2011).

## V. THE UNLAWFUL SPAMS

41.   Plaintiff alleges that Defendant engaged in tortious conduct: "a civil wrong, other than breach of contract, for which a remedy may be obtained, usually in the form of damages; a breach of a duty that the law imposes on persons who stand in a particular relation to one another." *Tort*, BLACK'S LAW DICTIONARY (11th ed. 2019).

42.   California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*, and California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, under which Section 17529.5 is found, prohibit "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**FIRST AMENDED CLASS ACTION COMPLAINT**

likelihood or tendency to deceive or confuse the public." *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2d Dist. 2013).

### A. The Emails at Issue are Unsolicited Commercial E-Mail Advertisements (*i.e.* "Spam")

43. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

44. Plaintiff received *at least* two (2) spams advertising Defendant's websites at Plaintiff's California e-mail address.

45. The e-mails at issue are "commercial e-mail advertisements" [7] because they advertise services provided by Defendant at the website *MedicarePlan.com* and were initiated for the purpose of advertising and promoting Defendant's products or services.

46. The e-mails are "unsolicited commercial e-mail advertisements" because Plaintiff never gave "direct consent" to Defendant, or any of its affiliates to send commercial e-mails.

47. Plaintiff has never had a "preexisting or current business relationship" with Defendant, or its affiliates.

48. Plaintiff did not opt-in to receive e-mails from Defendant's marketing agents. Even *if* Plaintiff had opted in to receive e-mails from Defendant's marketing agents—which Plaintiff denies—that would not constitute *direct* consent to Defendant, the advertiser in the spams. *See Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1099-1100 (1st Dist. 2012).

49. Plaintiff did not consent or acquiesce to receive the spams at issue. Plaintiff did not waive any claims related to the spams at issue.

50. Defendant advertised in, sent, and/or conspired to send *at least* two (2) unlawful spams that Plaintiff received at Plaintiff's "California e-mail address."

51. The spams are all unlawful because the spams contain or are accompanied by materially false and deceptive information, such as the use of third-party domain names without the third party's permission, and/or falsified, misrepresented, or forged information contained

---

[7] "Commercial e-mail advertisement" means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit.  Bus. & Prof. Code § 17529.1(c).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

in or accompanying the e-mail headers, and/or misleading Subject Lines, as described in more detail below.

**B.** **The Spam E-mails Contain or Are Accompanied By Third-Party Domain Names Without The Permission of the Third Party in Violation of Business & Professions Code § 17529.5(a)(1)**

52.  Section 17529.5(a)(1) prohibits spams containing or accompanied by a third party's domain name without the permission of the third party.

53.  The two (2) spam e-mails received by Plaintiff Nichols contain third-party domain names in the From field in each of the spam e-mails. These From fields were all forged to falsely include the third-party domain names in the Sender E-mail Addresses. The forged Sender E-mail Addresses are *orders@oe.target.com* and *help@craigslist.org*.

54.  These third-party domain names were contained in the Sender E-mail Address field in each of the spam e-mail headers.

55.  The "From" line field is part of e-mail headers. The From line has two distinctive parts: (1) the From Name, and (2) the Sender E-mail Address. For example, if an e-mail's "From" 'line states: "John Doe <johndoe@yahoo.com>", the From Name is "John Doe" and the Sender E-mail Address is "<johndoe@yahoo.com>."

56.  The From Name in an e-mail's header is designed to identify *who* the e-mail is from. The Internet Engineering Task Force created a collection of "Requests for Comment" ("RFCs") that define the rules and standard protocols that enable e-mail to work. According to RFC 5322 at ¶ 3.6.2 (emphasis in original):

> The "From:" field specifies the author(s) of the message, that is, the mailbox(es) of the person(s) or system(s) responsible for the writing of the message. . . . In all cases, the "From:" field SHOULD NOT contain any mailbox that does not belong to the author(s) of the message.

57.  The only content of a "From" line visible before an e-mail is opened is the "From Name." Therefore, a From Name that misrepresents *who* a spam is from is a deliberate and material misrepresentation of the most important part of the e-mail header—not a mere clerical error.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

58.   Although Plaintiff *does not* bring any claims under the federal CAN-SPAM Act, the Federal Trade Commission ("FTC") identified the From Name as the first item in misleading header information in its guide to CAN-SPAM compliance when it stated: "Don't use false or misleading header information. Your "*From,*" "To," "Reply-To," and routing information – including the originating domain name and e-mail address – *must be accurate and identify the person or business who initiated the message.*" Federal Trade Commission, CAN-SPAM Act: A Compliance Guide for Business (emphasis added).[8]

59.   Plaintiff does not insist on any particular label in the From Name field. Rather, Plaintiff contends that the text of a From Name field, whatever it is, cannot misrepresent *who* the e-mails are from.

60.   Plaintiff is informed and believes and thereon alleges that the emails at issue here falsely list domain names owned by third parties without the permission of the third parties.

61.   Plaintiff is informed and believes and thereon alleges that Defendants use third-party domain names to deceive recipients into believing that these third parties have endorsed or approved of Defendant's products and/or services.

62.   Plaintiff is informed and believes and thereon alleges that Defendants use these third-party domain names to use the good will of these third parties to trick the recipients into opening the emails and purchasing Defendant's products and/or services.

63.   *Craigslist.org* is contained in one of the spam e-mails at issue. Plaintiff is informed and believes and thereon alleges that third party Craigslist, Inc. did not give permission for its domain name *craigslist.org* to appear in or accompany any of the spams at issue in this complaint.

64.   *Target.com* is contained in one of the spam e-mails at issue. Plaintiff is informed and believes and thereon alleges that third party Target Brands Inc. did not give permission for its domain name *Target.com* to appear in or accompany one of the spams at issue in this complaint.

---

[8] http://www.business.ftc.gov/documents/bus61-can-spam-act-compliance-guide-business

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

65. Plaintiff could see the third parties' domain names when Plaintiff viewed the spam e-mails on Plaintiff's computer.

66. There is no readily discernible connection between the above entities and Defendant and no evidence that these entities consented to Defendant's use of their domain names in connection with the sending of the emails at issue, in violation of Section 17529.5(a)(1). Nothing indicates that these third parties use affiliate marketers or have an affiliate program for advertising business for other websites, such as Defendant's websites.

67. Such unauthorized use of third parties' domain names without permission is materially false and deceptive. Plaintiff is informed and believes and thereon alleges that Defendant and/or its marketing agents included the third-party domain names in order to: falsely lend an air of legitimacy to the spams by leveraging the brand equity of legitimate advertisers, making the recipients believe that the third-party endorses Defendant; and trick recipients and e-mail filters as to the source of the spam e-mails. If Defendant and its marketing agents used their own domain names, it would be more likely that spam filters and recipients would be able to identify the domain names as being associated with spammers, and block or disregard the spams. On the other hand, e-mails purportedly sent by the third party are more likely to be treated as legitimate e-mails and not spams, and therefore not blocked by e-mail filters or disregarded by recipients.

68. The unsolicited commercial emails Plaintiff received from Defendant violate Section 17529.5(a)(1) because the e-mail advertisements contain or are accompanied by a third-party's domain name without the permission of the third party, which misrepresents the identity of the sender, misappropriates the identity of the true owner of the third-party domain name, and falsely represents that the sender has a legitimate relationship with the third-party domain name's true owner.

69. Moreover, the emails Plaintiff received did not actually come from the purported domain names, and thus contain materially false, forged, deceptive, or misleading information in violation of Section 17529.5. *See Silverstein v. Keynetics, Inc.*, 2016 U.S. Dist. LEXIS 180174 (N.D. Cal. 2016).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

70.   The emails Plaintiff received were also materially false and deceptive because they were falsified, forged, or misrepresented to indicate that the sender was an actual entity known to Plaintiff, when the emails were, in fact, nothing but advertisements sent by Defendant or its agents. *See Hoang v. Reunion.com, Inc.*, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. 2010).

71.   Furthermore, since these spam e-mails were not actually sent from the domain names that appear in the Sender E-mail Addresses, the spam e-mails misrepresented the sender of the spam e-mails through the use of falsified and forged information.

**C.   Defendant is Strictly Liable for the Spam E-mails Sent By its Marketing Agents**

72.   Plaintiff is informed and believes and thereon alleges that Defendant contracted with third-party advertising networks and affiliates to advertise its websites for the purpose of selling products and services for a profit.

73.   Defendant knowingly, intentionally, and voluntarily chose to outsource their advertising to third-party spam networks and spammers.

74.   Advertisers are liable for advertising in spam e-mails, even if third parties sent the e-mails:

> "There is a need to regulate the advertisers who use spam, as well as the actual spammers because the actual spammers can be difficult to track down due to some return addresses that show up on the display as 'unknown' and many others being obvious fakes and they are often located offshore. The true beneficiaries of spam are the advertisers who benefit from the marketing derived from the advertisements." (Bus. & Prof. Code § 17529(j)(k).) "It is unlawful [ ] *to advertise* in a commercial e-mail advertisement [ ] under any of the following circumstances…"

Bus. & Prof. Code § 17529.5 (emphasis added). Thus, Defendant's agents are also liable for sending the unlawful spams.

75.   Section 17529.5(a) "makes an entity *strictly liable* for advertising in a commercial e-mail . . . *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient." *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 820-21 (2011) (emphasis added).

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

76.    In fact, in *Hypertouch*, the court of appeal held that advertisers are *strictly liable* for advertising in false and deceptive spams, even if the spams were sent by third-parties.

> *[S]ection 17529.5* makes it unlawful for a person or entity "to advertise in a commercial e-mail advertisement" that contains any of the deceptive statements described in *subdivisions (a)(1)-(3).* Thus, by its plain terms, the statute is not limited to entities that actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails.
>
> Thus, like other California statutes prohibiting false or misleading business practices, the statute makes an entity *strictly liable* for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) *regardless of whether the entity knew that such e-mails had been sent* or had any intent to deceive the recipient.

*Id.* at 820-21. The court did not find that this was an arbitrary requirement; rather, the court identified sound policy reasons behind the Legislature's decision to create a strict liability statute. *Id.* at 829.

77.    Moreover, Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents intended to deceive recipients of their spam messages through the use of falsified, misrepresented, and/or misleading information in third-party domain names, From Names, domain name registrations, and Subject Lines, as described herein.

78.    Forged Sender E-mail Addresses do not write themselves. The false and misrepresented information contained in and accompanying the e-mail headers are not "clerical errors." Plaintiff is informed and believes and thereon alleges that Defendant and/or Defendant's affiliates and/or Defendant's marketing agents went to great lengths to create falsified and misrepresented information contained in and accompanying the e-mail headers in order to materially deceive recipients, Internet Service Providers, and spam filters.

79.    Plaintiff is informed and believes and thereon alleges that Defendant has knowledge that its affiliates/marketing agents engage in the sending of false and deceptive spam.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

Plaintiff is informed and believes and thereon alleges that Defendant intended to profit, actually profited, and continue to profit, and were unjustly enriched by, its wrongful conduct as described herein.

**D.  No Proof of Reliance or Actual Damages is Necessary Because Plaintiff Sues for Statutory Liquidated Damages**

80.  The California Legislature set liquidated damages as $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

81.  Plaintiff is informed and believes and thereon alleges that the $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages per junk fax, pursuant to Business & Professions Code § 17538.43(b).

82.  Plaintiff's rightful and lawful demand for liquidated damages in the amount of $1,000 per e-mail is necessary to further the California Legislature's objective of protecting California residents from unlawful spam.

83.  Section 17529.5 does not require Plaintiff to quantify their actual damages, allege or prove reliance on the advertisements contained in the spams, or purchase the goods and services advertised in the spams. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828.

84.  However, Plaintiff did suffer damages by receiving the unlawful spams advertising Defendant's products and services in the state of California, at their California e-mail addresses. Bus. & Prof. Code § 17529(d), (e), (g), (h). Regardless, Plaintiff does not seek actual damages in this Action, only liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(B).

85.  Plaintiff is informed and believes and thereon alleges that Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

## VI. CLASS ACTION ALLEGATIONS

86.   Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

87.   Plaintiff bring this action for statutory liquidated damages on behalf of herself and all other similarly situated individuals. Plaintiff seek to represent a statewide Class defined as follows:

> *All California residents who received false or deceptive unsolicited commercial e-mails in violation of California Business & Professions Code § 17529.5, which advertised Defendant, within one year prior to the filing of this Action.*

88.   Excluded from the Class are (1) Defendant's officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns; and (2) any judge, justice, or judicial officer presiding over this matter and the  members of their immediate families and judicial staff.

89.   **Ascertainability.** At this time, Plaintiff does not know the exact number of members of the Class, but believes that there are thousands of members of the Class, if not more, within the State of California.

90.   Upon information and belief, Defendant and Defendant's agents/affiliates maintain records of the e-mails they send and the Internet traffic derived from the e-mail advertising at issue. Moreover, members of the Class who received e-mails with the alleged advertisements may be self-identified through their own e-mail records. Thus, the members of the Class are ascertainable through Defendant's records and/or the records of Defendant's agents/affiliates, as well as through public notice. This matter should therefore be certified as a Class action to assist in the expeditious litigation of this matter.

91.   **Numerosity.** The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes that the total number of the members of the Class is in the thousands. Members of the Class are numerous and geographically dispersed across the state of California. While the exact number and identities of the Class's members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

**FIRST AMENDED CLASS ACTION COMPLAINT**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

92. **Existence and Predominance of Common Questions of Law and Fact.** There is a well-defined community of interest in the questions of law and fact involved affecting the Class and these common questions predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

   a. Whether Class members received unsolicited commercial e-mail advertising the website *MedicarePlan.com*.

   b. Whether Defendant obtained direct consent to send commercial e-mail to Class members.

   c. Whether Defendant had no preexisting or current business relationship with Class members.

   d. Whether the unsolicited commercial e-mails received by Class members violate Bus. & Prof. Code § 17529.5.

   e. Whether the unsolicited commercial e-mails received by Class members contain a third-party domain name without the permission of the third party.

   f. Whether the information contained in the e-mail received by Class members is forged, falsified, misrepresented, deceptive, or misleading in violation of Bus. & Prof. Code § 17529.5.

   g. Whether the subject lines of the e-mails received by Class members are likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

   h. Whether Defendant is liable under Bus. & Prof. Code § 17529.5 for the actions of its affiliates, advertisers, employees or agents, who sent unlawful spams advertising *MedicarePlan.com*.

93. **Typicality.** Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by Defendant's common course of conduct since they all received unlawful, unsolicited spam e-mails that contain third-party domain names without the third party's permission and advertise *MedicarePlan.com*.

94. **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests adverse to that of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation and prosecuting actions related to consumer protection—including anti-spam litigation.

95. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice. Adjudication of individual Class members' claims with respect to the Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests.

96. Defendant has acted or refused to act on grounds that are generally applicable to the Class so that relief is appropriate to the Class as a whole, making class certification appropriate pursuant to California Code of Civil Procedure § 382.

### FIRST CAUSE OF ACTION
**[Violations of California Restrictions on Unsolicited Commercial E-mail,   California Business & Professions Code § 17529.5]**
**(Against All Defendants)**

97. Plaintiff hereby incorporates the foregoing paragraphs as though set forth in full herein.

98. Plaintiff received the spam e-mails within one year prior to filing this Complaint.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

99. Defendant advertised in, sent, assisted others in sending, conspired to send, contracted with others to send, and/or otherwise caused to be sent *at least* two (2) unsolicited commercial e-mail advertisements to Plaintiff's California electronic mail addresses and California Class members' e-mail addresses that had materially falsified, forged and/or misrepresented information contained in or accompanying the e-mail headers, and third-party domain names without the permission of the third party, in violation of Bus. & Prof. Code § 17529.5.

100. Plaintiff is informed and believes and thereon alleges that all of the emails use hypertext markup language ("HTML") in the body which reference remote images, which are not part of the email body but rather a link to a web server that could be anywhere on the Internet and controlled by any unknown third party. Many email clients automatically block remote images preventing recipients from seeing the sender upon initially opening the email.

101. Remote images are not actually part of the email body, but rather a link to a web server that could be anywhere on the Internet and controlled by Defendant or an unknown third party. *See ZooBuh, Inc. v. Better Broadcasting, LLC* 2013 U.S. Dist. LEXIS 77033 *22 n. 29 (D. Utah 2013).

102. Some spammers use remote hosted images to detect when emails are opened to detect active email addresses so that the spammer can either resell the email address and/or direct more emails to active email addresses which open emails.

103. Plaintiff is informed and believes and thereon alleges that most email clients, including Plaintiff's, automatically block remote hosted images in spam as a security measure to prevent spammers from detecting active email addresses.

104. The use of remote hosted images permits the senders to make the emails "self-destructing" in order to hide the identities of the Defendant and to avoid responsibility for Defendant's deliberately misleading unsolicited email advertisements and illegal activities.

105. The unlawful elements of these spam e-mails represent willful acts of falsity and deception, rather than clerical errors.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

106.   The California Legislature set liquidated damages at One Thousand Dollars ($1,000) per e-mail.

107.   Plaintiff seeks reimbursement of reasonable attorneys' fees and costs as authorized by Section 17529.5(b)(1)(C).

108.   The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Code of Civil Procedure § 1021.5. By prosecuting this action, Plaintiff expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant for:

- An Order from this Court declaring that Defendant violated Bus. & Prof. Code § 17529.5, by advertising in and sending unlawful spam e-mails.

- Liquidated damages of $2,000 against Defendant in the amount of $1,000 per each of the two (2) unlawful spam e-mail, as authorized by Bus. & Prof. Code § 17529.5(b)(1)(B)(ii).

- Reasonable attorneys' fees and costs as authorized by Bus. & Prof. Code § 17529.5(b)(1)(C).

- Disgorgement of all profits derived from unlawful spams directed to California residents; monies to be turned over to the Unfair Competition Law Fund and used by the California Attorney General to support investigations and prosecutions of California's consumer protection laws.

- Costs of suit.

- Such other and further relief as the Court deems proper.

## **DEMAND FOR JURY TRIAL**

109.   Pursuant to the California Constitution and California Code of Civil Procedure § 631, Plaintiff is entitled to, and demands, a trial by jury.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

Dated: December 17, 2019

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: _____   .

ABBAS KAZEROUNIAN, ESQ.
*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, SUITE D1
COSTA MESA, CA 92626

1 | Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
2 | Clark Conforti, Esq. (SBN: 317698)
clark@kazlg.com
3 | **Kazerouni Law Group, APC**
245 Fischer Avenue, Unit D1
4 | Costa Mesa, CA 92626
5 | Telephone:  (800) 400-6808
Facsimile: (800) 520-5523
6 |
7 | *Attorneys for Plaintiff,*
Ashley Nichols
8 |
9 |
10 |
## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## COUNTY OF SAN DIEGO
11 |

| ASHLEY NICHOLS, individually and on behalf of all others similarly situated, | CASE NO.: 37-2019-00055550-CL-MC-CTL |
|---|---|
| Plaintiff, | |
| v. | |
| ASSURANCE IQ, INC., a Washington corporation, d/b/a MedicarePlan.com; and DOES 1-100, inclusive, | **PROOF OF SERVICE** |
| Defendants. | |

25 | //
26 | //
27 | //
28 | //

*Nichols v. Assurance IQ, INc.*
*Case No.: 37-2019-00055550-CL-MC-CTL*
*Superior Court for the State of California, County of San Diego*

**PROOF OF SERVICE**

I, Antonia Smith, declare as follows:

I am over the age of eighteen years and not a party to the case.  I am employed in the County of San Diego, California, where the mailing occurs. My business address is 2221 Camino del Rio South, Suite 101, San Diego, CA, 92108. I am readily familiar with our business' practice of collecting, processing, and mailing of correspondence and pleadings for mail with the United States Postal Service.

On Thursday, December 26, 2019, I served the foregoing document(s) described as:

• **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF CALIFORNIA RESTRICTIONS ON UNSOLICITED COMMERCIAL E-MAIL**

> Sarah de Diego
> **De Diego Law**
> 1320 Arizona Avenue, Suite 1
> Santa Monica, CA 90403

On the interested parties in said case addressed as follows:

[X] BY MAIL, by placing a copy thereof in a separate envelope for each addressee named above, addressed to  each addressee respectively, and then sealed each envelope and, with the postage fully prepaid, deposited each in the United States mail at San Diego, California in accordance with our business' practice.

[ ] BY OVERNIGHT MAIL, by placing a copy thereof in a separate envelope for each addressee named above, addressed to each addressee respectively, and then sealed each envelope and, with the postage fully prepaid, deposited each in the Overnight delivery receptacle mail at San Diego, California in accordance with our business' practice.

[ ] BY FACSIMILE, this document was transmitted by facsimile transmission from (619) 297-1022 and transmission was reported as complete and without error.  A copy of the transmission report is attached to this affidavit.

[ ] ELECTRONICALLY, this document was transmitted by the Internet from our office.

[ ] PERSONAL SERVICE, this document was personally delivered to the person listed above.

I declare under penalty under perjury under the laws of the State of California that the foregoing is true and correct.  Executed on December 26, 2019, at San Diego, California.

_____
Antonia Smith

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:     STATE BAR NO: 317698<br>NAME: Clark R. Conforti, Esq.<br>FIRM NAME: Kazerouni Law Group, APC<br>STREET ADDRESS: 245 Fischer Avenue, Unit D1<br>CITY: Costa Mesa      STATE: CA    ZIP CODE: 92626<br>TELEPHONE NO.: (800) 400-6808    FAX NO.: (800) 520-5523<br>E-MAIL ADDRESS: clark@kazlg.com<br>ATTORNEY FOR (Name): Plaintiff Ashley Nichols | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>**01/23/2020** at 09:36:00 AM<br><br>Clerk of the Superior Court<br>By E- Filing, Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: same as above
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division – Hall of Justice

Plaintiff/Petitioner: Ashley Nichols
Defendant/Respondent: Assurance IQ, Inc.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>37-2019-00055550-CL-MC-CTL |
|---|---|

TO (insert name of party being served): ASSURANCE IQ, INC., a Washington corporation d/b/a MedicarePlan.com

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: 01/03/2020

Clark R. Conforti      ▶
(TYPE OR PRINT NAME)       (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☒ Other (specify):

     First Amended Class Action Complaint

*(To be completed by recipient):*

Date this form is signed:   01/21/20

Sarah de Diego      ▶
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)      ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

1

**PROOF OF SERVICE**

2

    I am a resident of the State of California, over the age of eighteen years, and not a party

3

to the within action.  My business address is Kazerouni Law Group, APC, 245 Fischer Avenue, Unit D1, Costa Mesa, California 92626.  On January 3, 2020, I served the within document(s):

4

5

    •  **NOTICE AND ACKNOWLEDGEMENT OF RECEIPT - CIVIL**

6

☐     FACSIMILE – by transmitting via facsimile the document(s) listed above to the fax number(s) set forth on the attached Telecommunications Cover Page(s) on this date before 5:00 p.m.

7

8

☐     MAIL – by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below.

9

10

☐     PERSONAL SERVICE – by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

11

☐     OVERNIGHT COURIER – by placing the document(s) listed above in a sealed envelope with shipping prepaid, and depositing in a collection box for next day delivery to the person(s) at the address(es) set forth below via.

12

13

☒     EMAIL – this document was transmitted by the Internet from our office to the email addresses set forth below.

14

15

    **DE DIEGO LAW**

16

    **Sarah de Diego, Esq.**
    **sarah@dediego.law**

17

    *Attorneys for Defendant ASSURANCE IQ, INC.*

18

    I am readily familiar with the firm's practice of collection and processing

19

correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

20

I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

21

    I declare under penalty of perjury under the laws of the State of California that the above

22

is true and correct.  Executed on January 3, 2020, at Costa Mesa, California.

23

24

_____

25

CLARK R. CONFORTI

26

27

28

**PROOF OF SERVICE**

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626