**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
Clark R. Conforti, Esq. (SBN: 317698)
clark@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Plaintiff,*
Ashley Nichols

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ASHLEY NICHOLS, individually and on behalf of all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**ASSURANCE IQ., INC., d/b/a MedicarePlan.com; and DOES 1-100, inclusive**<br><br>Defendant. | Case No.: 3:20-cv-00210-BAS-AHG<br><br>CLASS ACTION<br><br>**PLAINTIFF ASHLEY NICHOLS' OPPOSITION TO DEFENDANT ASSURANCE IQ, INC.'S MOTION TO DISMISS COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2)**<br><br>Action Filed:   October 18, 2019<br>Removed:          January 31, 2020<br>Trial Date:        None Set<br>Hearing Date:   April 6, 2020<br><br><br>**HON. CYNTHIA A. BASHANT** |

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1

## TABLE OF CONTENTS

PAGE

I.   **INTRODUCTION** ............................................................... 1

II.  **STATEMENT OF FACTS** ................................................. 2

III. **LEGAL STANDARD** ......................................................... 4

   A. EMAILS IN VIOLATION OF SECTION 17529.5(a)(1) ..................... 5

IV.  **ARGUMENT** ....................................................................... 6

   A. THE COURT HAS GENERAL JURISDICTION OVER ASSURANCE ................... 7

   B. THE COURT HAS SPECIFIC JURISDICTION OVER ASSURANCE ................... 9

      1. *Assurance is Strictly Liable For Its Marketing Activity and Agent's Unlawful Emails* ................................................................. 9

      2. *Assurance Purposefully Availed Itself and Directly Benefitted From the Privilege of Conducting Activities in California* ................................. 12

      3. *Plaintiff's Claims Arise Directly Out of Assurance's Contacts with California* ........................................................................ 17

      4. *Assurance Has Failed To Meet Its Burden to Show that Jurisdiction Would Be Unreasonable* ........................................................ 18

   C. ALTERNATIVELY, THE COURT SHOULD NOT DISMISS ASSURANCE AND SHOULD ALLOW PLAINTIFF TO CONDUCT JURISDICTIONAL DISCOVERY REGARDING ASSURANCE'S CONTACT WITH CALIFORNIA ........................ 19

   D. ALTERNATIVELY, THE COURT SHOULD NOT DISMISS ASSURANCE AND SHOULD TOLL ANY APPLICABLE STATUTE OF LIMITATIONS TO ALLOW PLAINTIFF TO TRANSFER THIS MATTER TO THE STATE OF WASHINGTON ............................................................................. 21

V.   **CONCLUSION** .................................................................. 21

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF AUTHORITIES

CASES                                                                                                             PAGE(S)

2

3
*Abbot Power Corporation v. Overhead Electric Company*,
    60 Cal. App. 3d 272 (1976) ................................................................. 13

4
*Asahi Metal Indus. Co. v. Superior Court of Cal., Solano City*,
    480 U.S. 102 (1987) ........................................................................... 12

5

6
*Baden Sports Inc. v. Kabusiki Kaisha Molten*,
    2007 U.S. Dist. LEXIS 3881 (W.D. Wash. 20007) ........................... *passim*

7
*Ballard v. Savage*,
    65 F.3d 1495 (9th Cir. 1995) ............................................................ 17

8

9
*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
    223 F.3d 1082 (9th Cir 2000) ........................................................... *passim*

10
*Belly Fat Free, LLC v. Silverstein*,
    2013 U.S. Dist. LEXIS 198759 (C.D. Cal. 2013) .............................. 6

11

12
*Boschetto v. Hansing*,
    539 F.3d 1011 (9th Cir. 2008) .......................................................... 20

13
*Brayton Purcell LLP v. Recordon & Recordon*,
    606 F.3d 1124 (9th Cir. 2010) .......................................................... 12

14

15
*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ...................................................................... 5, 15 ,18

16
*Calder v. Jones*,
    465 U.S. 783 (1984) ........................................................................... 13

17

18
*Chan v. Soc'y Expeditions, Inc.*,
    39 F.3d 1398 (9th Cir. 1994) ............................................................ 10

19
*Cybersell, Inc. v. Cybersell, Inc.*,
    130 F.3d 414 (9th Cir. 1997) ............................................................ 16

20

21
*Decker Coal Co. v. Commonwealth Edison Co.*,
    805 F.2d 834 (9th Cir. 1986) ............................................................ 16

22
*Deckers Outdoor Corp. v. Merz*,
    2010 U.S. Dist. LEXIS 153445 (C.D. Cal. 2010) .............................. 15, 17

23
*Doe v. Unocal*,
    248 F.3d 915 (9th Cir. 2006) ............................................................ 4, 11

24

25
*Durward v. One Techs. LLC*,
    2019 U.S. Dist. LEXIS 174012 (C.D. Cal. 2019) .............................. 4

26

27
*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ........................................................................... 4

28
*Hirsch v. Blue Cross, Blue Shield of Kansas City*,

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626

800 F.2d 1474(9th Cir. 1986) ...................................................... 5

*Hypertouch Inc. v. ValueClick, Inc.*,
192 Cal. App. 4th 805 (2d Dist. 2011)................................ 9, 10

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) ....................................................... 4, 13

*Gator.com Corp. v. L.L. Bean, Inc.*,
341 F.3d 1072 (9th Cir. 2003) ............................................ 14

*Keeton v. Hustler Magazine, Inc.*,
465 U.S. 770 (1984) ..................................................... 12, 13

*Loomis v. Slendertone Distrib., Inc.*,
2019 U.S. Dist. LEXIS 193169 (S.D. Cal. 2019)........................ 7

*Mavrix Photo Inc. v. Brand Techs, Inc.*,
647 F.3d 1218 (9th Cir. 2011) .......................................... 4, 7

*Metropolitan Life Ins. Co. v. Neaves*,
912 F.2d 1062 (9th Cir. 1990) ............................................ 16

*McGee v. International Life Ins. Co.*,
78 S. Ct. 1999 (1957) ........................................................ 13

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2001) .......................................... 4, 5

*Schwarzenegger v. Fred Martin Motor Co.*,
223 F.3d 797 (9th Cir. 2004) ........................................... 5, 12

*Silverstein v. E360 Insight, LLC*,
2007 U.S. Dist. LEXIS 57695 (C.D. Cal. 2007) ................ *passim*

*Sinatra v. Nat'l Enquirer, Inc.*,
854 F.2d 1191 (9th Cir. 1988) ............................................ 18

*Stomp, Inc. v. NeatO, LLC*,
61 F. Supp. 2d 1074 (C.D. Cal. 1999) ................................... 14

*Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*,
704 F.3d 668 (9th Cir. 2012) .............................................. 12

*Weakley v. Redline Recovery Servs., LLC*,
723 F. Supp. 2d 1341 (S.D. Cal. 2010) .................................. 18

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
556 F.2d 406 (9th Cir. 1977) .............................................. 10

*Zippo Mfg. Co. v. Zippo Dot.Com, Inc.*,
952 F. Supp. 1119 (W.D. Penn. 1997) ................................... 15

//
//
//

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

| | |
|---|---|
| **STATUTES** | **PAGE(S)** |

CALIFORNIA BUSINESS & PROFESSIONS CODE

Bus. & Prof. Code § 17529(j) ................................................................. 10

Bus. & Prof. Code § 17529.1(a) ............................................................... 9

Bus. & Prof. Code § 17529.5 ........................................................... *passim*

Bus. & Prof. Code § 17529.5(a) ............................................................... 6

Bus. & Prof. Code § 17529.5(a)(1) ........................................................... 6

Bus. & Prof. Code § 17529.5(a)(2) ........................................................... 6

Bus. & Prof. Code § 17529.5(a)(3) ........................................................... 6

Bus. & Prof. Code § 17529.5(b)(1)(A)(iii) ................................................. 6

Bus. & Prof. Code § 17529.5(b)(1)(B)(ii) ................................................. 6

Bus. & Prof. Code § 17529.5(b)(1)(C) ..................................................... 6


FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 12(b)(2) ............................................................... *passim*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## I. **INTRODUCTION**

Plaintiff ASHLEY NICHOLS ("Plaintiff") filed this lawsuit against Defendant ASSURANCE IQ, LLC f/k/a ASSURANCE IQ, INC. ("Assurance") for violations of California's Anti-spam Law, California Business & Professions Code § 17529.5, *et seq.*, based on Assurance's unlawful advertising through unsolicited commercial email, commonly referred to as "spam," sent to Plaintiff's California email address and the email addresses of the class Plaintiff seeks to represent by Assurance and its marketing agents. Assurance now moves to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

Assurance knowingly advertised in the deceptive emails at issue to direct consumers to its interactive website and intentionally accepted the benefit of the advertising in California. Through this marketing scheme, Assurance obtained increased traffic for its many interactive websites, which collect various types of consumer data—including location information—to tailor an insurance or financial services quote for the consumer based on where the consumer resides, with the intent to enters into contractual relationships with the consumer. Assurance's wholly owned marketing subsidiary reviews these "click campaigns" and tracks the "leads" generated by each of its affiliate marketing agents and compensates the agents based on the increased traffic identified by a unique affiliate tracking number that is included in the hyperlinks sent by the agents.

For the reasons discussed below, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety. In the alternative, Plaintiff requests jurisdictional discovery to ascertain the extent of Assurance's contacts with the State of California and Assurance's relationship with its marketing agents related to the unsolicited commercial emails from which Plaintiff's claims arise. Further, should the Court grant Assurance's motion, any applicable  statute of limitations should be tolled to allow Plaintiff to transfer this Action to the State of Washington.

## II.  <u>STATEMENT OF FACTS</u>

Assurance is a Washington limited liability company and its sole member is Prudential Financial, Inc. ("Prudential"), a publicly traded company. [*See* Dkt. No. 9-3, Declaration of John Lorge ("Lorge Decl.") ¶¶ 2; *See* Plaintiff's Request for Judicial Notice ("RJN"), Ex. 3, 4]. Assurance "uses advanced online technology and data science" to locate consumers and sell them tailored insurance policies and other financial services in the jurisdictions in which those individuals reside and their other specific needs. [Lorge Decl. ¶ 4]. Assurance conducts a large amount of Assurance's business directly through its interactive website[1] which allows Assurance to target and collect consumer data,[2] including device and location information, to determine what policies or services the consumer may qualify for. [*See* Plaintiff's RJN, Ex. 1, 2].

In order to drive consumers to its websites, Assurance and its wholly-owned subsidiary/marketing company, National Family Assurance Group LLC ("National"), contracts with numerous third-party advertising agencies and publishers, such as Sphere Digital, LLC and Pacific Business Link Ltd, who advertise Assurance's websites in commercial emails and other digital media. [*See* Dkt. No. 2, Certification and Notice of Interested Parties; Lorge Decl. ¶¶ 7-8, 14-

---

[1] Assurance's own website states that "[m]any of our customers apply entirely online, while others prefer the combination of our digital guidance and the expertise of our on-demand licensed agents. After applying, we guide you through the approval process to put the coverage in place. Once you are an Assurance customer, you have our lifetime commitment to help you with any questions you might have or modify your coverage as your needs change." *See* Plaintiff's RJN, Ex. 1.

[2] Assurance's website also contains a privacy policy that details three primary ways that Assurance collects information about consumers, which includes information that Assurance "automatically" collects, such as device, log, and location information and information that Assurance collects from third parties, such as to collect information from a third party to "verify the address" the consumer provided and help Assurance understand the consumer's "occupational background." *See* Plaintiff's RJN, Ex. 2.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

15]. On Assurance's behalf and for its benefit, National then tracks the "click" traffic and the "leads" that are generated by the hyperlinks the various affiliate advertisers send, which contain affiliate tracking numbers which allow review of the data generated by the various advertisers to determine compensation for each based on the performance of the leads and traffic generated. [*See* Lorge Decl. ¶¶ 13-15].

Through this extensive and sustained electronic marketing, Assurance knowingly advertises its interactive websites through hyperlinks and commercial email advertisements that were received by Plaintiff and California consumers. [Dkt. No. 1, First Amended Complaint ("FAC") ¶¶ 29-37, 72-76, 86-96]. Assurance solicits and actively seeks to engage in business in California, serves California's markets, and creates ongoing obligations with consumers in California related to the services Assurance provides. [*Id.*]. Thus, Assurance knowingly and intentionally benefits from the email marketing received by Plaintiff and California consumers, who are directed to Assurance's interactive website, which collects the consumer's data so that Assurance may sell them insurance or financial services based on their location and other relevant demographic information. [*See* Plaintiff's RJN, Ex. 1, 2].

As a result of Assurance's commercial email marketing, Plaintiff and members of the proposed class received false and deceptive unsolicited emails advertising Assurance. Here, the emails Plaintiff received contained hyperlinks that redirected to *MedicarePlan.com*, which is operated by Assurance and the emails were manipulated to make them look like they were sent from *Target.com* and *Craigslist.org* in order to deceive Plaintiff and other recipients to open the email and follow the advertisements contained within to Assurance's interactive website where Assurance attempts to sell its insurance and financial services. [FAC ¶¶ 23-25, 52-54, 59-71].

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

## III. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure ("Rule") 12(b)(2) allows a court to dismiss a matter for "lack of jurisdiction over the person." Fed. R. Civ. P. 12(b)(2). When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant; however, the plaintiff must "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006); *see also Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001). Moreover, "[w]here not directly controverted, plaintiff's version of the facts is taken as true for purposes of a 12(b)(2) motion to dismiss." *Durward v. One Techs. LLC*, 2019 U.S. Dist. LEXIS 174012, *4 (C.D. Cal. Oct. 3, 2019); *see also Unocal*, 248 F.3d at 922. A court may exercise personal jurisdiction over a nonresident defendant consistently with due process only so long as there exist "minimum contacts" between the defendant and the forum, such that maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Durward*, 2019 U.S. Dist. LEXIS 174012, *4-5 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 8 & 9 (1984). For general jurisdiction to exist, a defendant must engage in "continuous and systematic general business contacts" that "approximate physical presence" in the forum state as to render them essentially at home in the forum. *See Mavrix Photo Inc. v. Brand Techs, Inc.* 647 F.3d 1218, 1223-24 (9th Cir. 2011); *see also Durward*, 2019 U.S. Dist. LEXIS 174012, *5; *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). "Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serve's the state's markets, designates an agent for service of process, holds a license, or is incorporated in the state." *Silverstein v. E360 Insight, LLC*, 2007 U.S. Dist.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

LEXIS 57695, *11-12 (C.D. Cal. 2007); *see Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

Where general jurisdiction does not exist, the Ninth Circuit employs a three-part test to analyze whether a party's "minimum contacts" are sufficient to exercise specific jurisdiction when,

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable.

*Pebble Beach Co.*, 453 F.3d at 1155; *see also Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). The plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004); *Sher*, 911. F.2d at 1361. If the first two prongs are satisfied, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

## A.  CALIFORNIA BUSINESS & PROFESSIONS CODE § 17529.5

California's Anti-spam Law, Bus. & Prof. Code § 17529.5 ("Section 17529.5") makes it unlawful for any person or entity to advertise in a commercial email advertisement sent to a California email address and provides three types of violations: (1) the email contains or is accompanied by a third-party's domain name without the permission of the third party; (2) the email contains or is accompanied by falsified, misrepresented, or forged header information; or (3) the email has a subject line that a person knowns would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message. Bus. & Prof. §

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

17529.5(a)(1)-(3). The law also allows the recipient of the unsolicited email to bring an action against a person or entity that violates any provision of Section 17529.5 and allows recovery of both actual damages and liquated damages of one thousand dollars ($1,000) per email sent in violation of the Section as well as an award for the recipient's reasonable attorney's fees and costs. *See Belly Fat Free, LLC v. Silverstein*, 2013 U.S. Dist. LEXIS 198759, *3 (C.D. Cal. 2013); Bus. & Prof. § 17529.5(b)(1)(A)(iii)-(C).

## IV.   ARGUMENT

Assurance's Motion should be denied because both general and specific jurisdiction exist over Assurance, as discussed further herein. Assurance on the one hand asserts that it should be allowed to engage in deceptive advertising in California and solicit and engage in substantial business in the forum, thereby accepting the benefits and protections of California, but that it would be unreasonable for Assurance to defend suit outside of Washington because Assurance does not have a physical "office" in California and because Assurance engaged its agents to send the advertising for its website on its behalf.

Assurance attempts to outsource responsibility for its unlawful unsolicited commercial advertising onto its wholly-owned subsidiary and agents, while claiming ignorance as to how its own marketing is conducted. However, it is clear that Assurance intentionally directs advertising of its interactive website to California consumers to sell insurance and financial services and knowingly accepts the benefit of the deceptive unsolicited commercial email advertising received by Plaintiff and members of the proposed class in California.

Further, Plaintiff did have direct contact with Assurance through the unsolicited commercial email advertisement she received because the email contained a hyperlink, which redirected to one of Assurance's websites at *MedicarePlan.com* when Plaintiff clicked on the hyperlink. [FAC ¶¶ 24, 25, 44-

45; Plaintiff's RJN, Ex. 6].[3]  Plaintiff's counsel has provided Assurance's counsel with the emails received by Plaintiff, including the associated metadata, as well as redirect trace reports showing that the hyperlink contained in the email Plaintiff received redirected to Assurance's website. [Declaration of Clark R. Conforti ("Conforti Decl.") ¶ 5; Lorge Decl. ¶ 14].

Alternatively, should the Court grant Defendant's motion, the Court should allow Plaintiff to conduct jurisdictional discovery to ascertain the full extent of Assurance's contacts with California and its relationship to the other parties involved in its marketing scheme. Further, any applicable statute of limitations should be tolled to allow Plaintiff to transfer this Action to the State of Washington.

## A.   THE COURT HAS GENERAL JURISDICTION OVER ASSURANCE

The place of incorporation and principal place of business are not the only means to achieve general jurisdiction for a corporation. *Loomis v. Slendertone Distrib., Inc.*, 2019 U.S. Dist. LEXIS 193169, *18 (S.D. Cal. Nov. 4, 2019). To determine whether a corporation is "essentially at home," courts may examine the "[l]ongevity, continuity, volume, [and] economic impact" of those contacts, as well as the defendant's "physical presence [] and integration into the state's regulatory or economic markets." *Id.* at *18-19; *see Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1224 (9th Cir. 2011).

Assurance is subject to general jurisdiction because it has purposefully availed itself of the benefits and protections of California through its "continuous and systematic" business contacts with the State of California and California residents amounting to approximate physical presence in California. Through its "variety of websites" Assurance solicits or engages in business in California,

---

[3] The website that Plaintiff was redirected to when she opened the emails she received is nearly identical to the website as it appears on Assurance's webpage today. *See* Plaintiff's RJN, Ex. 5 and 6.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(2)

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

serves California's markets, holds a license and files tax returns in the State of California, has employees located in California, enters into contracts with California consumers and third-party affiliate marketers related to the advertising of its services in California, and creates ongoing relationships in California related to the distribution of the spam emails and advertising of insurance quotes for Assurance's websites. [*See* Lorge Decl. ¶¶ 4, 6-9, 13-20].

Assurance essentially argues that it cannot be subject to personal jurisdiction in the California because it is incorporated in Washington and operates in multiple states. Moreover, Assurance attempts to limit the inquiry into its "continuous and systematic" contacts with the forum state by merely addressing a discrete subset of emails sent by a single publisher, but fails to provide information regarding Assurance and its extensive network of websites and affiliate advertisers through which Assurance obtains "leads" who are redirected to Assurance's interactive websites where Assurance sells its insurance services and creates ongoing business relationships in California caused by Assurance's sustained email marketing efforts. [FAC ¶¶ 5-16, 23-25, 41-79; Lorge Decl. ¶ 20; Plaintiff's RJN, Ex. 1-5].[4] Assurance also omits the total amount of business it conducts in the forum. Moreover, Assurance's advertising is intended to lead to the sale of insurance and financial services leading to ongoing contractual obligations to consumers in California. Assurance's own website

---

[4] Assurance's website explains how its process works: "At Assurance, we start by determining your insurance needs as well as the coverage you'll qualify for based on a variety of factors including your age, health, and enrollment periods. That allows us to build a plan personalized to you and your unique needs. Many of our customers apply entirely online, while others prefer the combination of our digital guidance and the expertise of our on-demand licensed agents. After applying, we guide you through the approval process to put the coverage in place. Once you are an Assurance customer, you have our lifetime commitment to help you with any questions you might have or modify your coverage as your needs change." *See* Plaintiff's RJN, Ex. 1.

acknowledges this stating "[o]nce you are an Assurance customer, you have our lifetime commitment to help you with any questions you might have or modify your coverage as your needs change." [Plaintiff's RJN, Ex. 1].

Thus, general jurisdiction is satisfied over Assurance based on the extent of the continuous and systematic contacts and integrated and ongoing nature of its many business relationship that Assurance, its parent, and their marketing agents conduct within the forum, such that Assurance is essentially at home in California.

## B. THE COURT HAS SPECIFIC JURISDICTION OVER ASSURANCE

Assurance essentially argues that it is not subject to specific jurisdiction because it is incorporated in Washington and did not "send" the emails itself, despite Assurance directing its marketing subsidiary and agents to advertise directly to Assurance's website to sell Assurance's services to consumers and purposefully availing itself of California's markets. Assurance also fails to acknowledge that "[b]usiness transactions which are conducted via the Internet may subject the defendant to specific jurisdiction and are subject to the same analysis as traditional business transactions" and attempts to minimize its role in and benefit derived from its own marketing scheme. *E360 Insight, LLC*, 2007 U.S. Dist. LEXIS 57695, *12. Assurance and its agents, through the emails at issue, reached into the forum and solicited an ongoing business relationship with Plaintiff, directing Plaintiff to Assurance's highly interactive website, thereby purposefully targeting and availing itself of Plaintiff in the forum.

### 1. *Assurance Is Strictly Liable For Its Marketing Activity and Agents' Unlawful Emails*

Assurance incorrectly focuses on *who* sent the emails, but Section 17529.5 does not require a defendant to "send" the emails at issue, but instead imposes strict liability on "any entity that *advertises* in those e-mails." *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 820 (2d Dist. 2011) (emphasis added); Cal. Bus. & Prof. Code §§ 17529.1(a), 17529.5(a). Here, Assurance advertised in the emails through hyperlinks that redirected consumers to its

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

websites where it offered them tailored insurance and financial services based on the consumer's location and other information.

The Legislature's intent to deter advertisers—like Assurance—from engaging/profiting from these unlawful emails is clear in the statute itself, which provides that "[t]here is a need to regulate the advertisers who use spam, as well as the actual spammers, because the actual spammers can be difficult to track down due to some return addresses that show up on the display as "unknown" and many others being obvious fakes and they are often located offshore." Cal. Bus. & Prof. Code § 17529(j). Likewise, the "Legislature did not intend the statute to apply solely to those entities that actually send or initiate a deceptive e-mail" and the statute "does not require the plaintiff to show that the defendant actually made a false or deceptive statement." *Hypertouch, Inc.*, 192 Cal. App. 4th at 820.

Case law also establishes that advertisers are liable because they are in the best position to incentivize compliant business practices and are the ultimate beneficiaries of the profits derived from the false and deceptive advertising the law is designed to prevent. *See Hypertouch, Inc.*, 192 Cal. App. 4th at 820-21, 829-30. "[L]ike other California statutes prohibiting false or misleading business practices, the statute makes an entity strictly liable for advertising in a commercial e-mail that violates the substantive provisions described in section 17529.5, subdivision (a) regardless of whether the entity knew that such e-mails had been sent or had any intent to deceive the recipient." *Id.* at 821-22 (emphasis added).

Moreover, the Ninth Circuit has held that jurisdiction over a foreign defendant can be established through minimum contacts in the forum by a subsidiary that was "either established for, or is engaged in activities that, but for the existence of the subsidiary, the parent would have to undertake itself." *Baden Sports, Inc. v. Kabusiki Kaisha Molten*, 2007 U.S. Dist. LEXIS 3881 (W.D. Wash. 2007) (citing *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 n. 9 (9th Cir. 1994)); *see Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 422-23

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

(9th Cir. 1977); *see also Unocal Corp.,* 248 F.3d 915, 928 ("The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.")

Assurance's website and "advanced online technology and data science" are clearly central to its business model and driving traffic to Assurance's website is vital to its success. In fact, it appears that Assurance's purchase by Prudential was based in large part on Assurance's ability to reach digital-savvy consumers who shop on the Internet. Assurance acknowledges that its wholly-owned subsidiary, National Family Assurance Group LLC, contracted with the advertising agency and publisher to advertise Assurance's website to consumers in order to operate its business model.[5] [*See* Lorge Decl. ¶¶ 6-8, 14-15; FAC ¶¶ 5-16, 23-25, 41-79]. Assurance's subsidiary then compensated the advertising agents based on the performance of the "click campaign" for the intended benefit of Assurance. [Lorge Decl. ¶¶ 14, 15]. Clearly, Assurance's advertising efforts are sufficiently important to its business that, but for its subsidiary and agents, Assurance would undertake to perform substantially the same services that resulted in Plaintiff receiving the emails at issue. As such, Assurance's attempts to insulate itself and avoid responsibility in California for the deceptive email marketing it commissions and benefits from in order to shift responsibility to its agents should be disregarded.

[5] It is also worth noting that Assurance's parent company/sole member, Prudential Financial, Inc., completed purchase of Assurance in October 2019 for $2.35 billion. Assurance is a "wholly owned subsidiary of Prudential under the U.S. Business division" according to Prudential's own website for purposes of the "agency test" analysis. *See* Plaintiff's RJN, Ex. 3, 4.

Thus, Assurance is strictly liable for its unlawful advertising, regardless of whether Assurance or its agents sent the email. Assurance is in the best position to enforce compliance from its marketing agents to prevent the deceptive advertisements at issue, but instead attempts to turn a blind eye while retaining the benefit of the unlawful advertising. Further, the agency test is satisfied because Assurance knowingly and intentionally directed its wholly-owned marketing subsidiary to advertise Assurance's websites, and the subsidiary then, on Assurance's behalf, compensated the advertising agency and publisher based on the its performance and the increased traffic and "leads" Assurance derived from the email advertising.

## 2. _Assurance Purposefully Availed Itself of the Privilege of Conducting Activities in California_

The first prong embodies two concepts known as "purposeful availment" and "purposeful direction." _Wash. Shoe Co. v. A-Z Sporting Goods, Inc.,_ 704 F.3d 668, 672-73 (9th Cir. 2012); _Brayton Purcell, LLP v. Recordon & Recordon_, 606 F.3d 1124, 1128 (9th Cir. 2010). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." _Schwarzenegger,_ 374 F.3d at 802. For tort claims, "[a] showing that a defendant purposefully directed [its] conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside of the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." _Id._ at 803 (citing _Keeton v. Hustler Magazine, Inc.,_ 465 U.S. 770, 774-75 (1984)). A corporation can purposefully avail itself of a forum by directing its agents or distributers to take actions there. _See e.g. Asahi Metal Indus. Co. v. Superior Court of Cal., Solano City,_ 480 U.S. 102, 112 (opinion of O'Connor J.) (defendant's act of "marketing [a] product through a distributer who has agreed to serve as the sales agent in the forum state" may amount to purposeful availment); _International_

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

*Shoe,* 236 U.S. at 318, ("the commission of some single or occasional acts of the corporate agent in a state" may sometimes "be deemed sufficient to render the corporation liable to suit" on related claims);

In *McGee v. International Life Ins. Co.,* Lowell Franklin, a California resident, bought an insurance policy from Arizona-based insurance company ("Empire") with an office in Texas. 78 S.Ct. 199, 221 (1957). Empire's sole contact with California consisted of mailing the policy from Texas to Franklin residence in California. *Id.* at 221-223. When Franklin died, Empire rejected Franklin's mother's claim for benefits. *Id.* at 221. When Franklin's mother sued Empire in Federal Court, Empire challenged the court's jurisdiction arguing that mailing a contract to California was insufficient to exercise specific jurisdiction over Empire. The U.S. Supreme Court disagreed, stating that it was "sufficient for purposes of due process that the suit was based on a contract [the insurance policy] which had substantial connection with that State." *Id.* at 223.

In *Abbot Power Corporation v. Overhead Electric Company*, the court also determined that sending letters to a California address was sufficient basis for personal jurisdiction because they "constitute[d] in substantial part the instrumentality of the tort of which plaintiff complains." 60 Cal.App.3d 272 (1976). In *Keeton v. Hustler Magazine, Inc*., the Court found purposeful direction where defendant published magazines in Ohio and circulated them in the forum state, New Hampshire. 465 U.S. 770, 774–75 (1984). In *Calder v. Jones*, the Supreme Court of the United States held that it was proper for a court in California to exercise jurisdiction over two Florida newspapermen in a libel action arising out of their intentional conduct in Florida, which was calculated to cause injuries in California. 465 U.S. 783 (1984).

"In the Internet context, the Ninth Circuit utilizes a sliding scale analysis under which 'passive' websites do not create sufficient contacts to establish purposeful availment, whereas interactive websites may create sufficient contacts,

depending on how interactive the website is." *Bancroft*, 858 F. Supp. 2d 1084, 1090; *see Gator.com Corp. v. L.L. Bean, Inc.*, 341 F.3d 1072, 1079-80 (9th Cir. 2003). Here, it is unquestionable that Assurance purposefully directed its conduct beyond the boundaries of Washington and into California. As in *Bancroft*, Assurance actively promotes its highly interactive website through deceptive emails and uses the increased traffic derived from the marketing to sells its services. *See* 858 F. Supp. 2d at 1090 ("the Court finds that by actively promoting and operating a commercial website through which sales of allegedly infringing products are made to consumers in California, Defendant purposefully availed herself of the benefits of doing business in California, such that she should reasonably anticipate being haled into court here"); *see Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999).

Assurance acts through its marketing agents, and in conjunction with its website, to utilize its "advanced online technology and data science to help consumers find insurance policies tailored to their specific needs" and generate profit by "provid[ing] consumers the ability to obtain insurance quotes." [*See* Lorge Decl. ¶¶ 4, 7, 20; Plaintiff's RJN, Ex. 2]. Assurance also acts as a wholly owned subsidiary of its parent, Prudential, which allows Prudential, as the traditional life insurer, to pair with an "insurance technology firm" (Assurance) to reach new audiences and benefit from data analysis done by algorithms. [Lorge Decl. ¶ 2; Plaintiff's RJN, Ex. 3, 4]. Assurance uses online advertising and other marketing to attract consumers to its online platforms and uses data science and machine learning to assess needs, guide consumers to products they can afford, and speed up the application process. [Lorge Decl. ¶ 4; FAC ¶¶ 23-25, 29-79].

Assurance "purposefully derives benefit" from its interstate activities such that it would be unfair to allow Assurance to wield the Due Process Clause "as a territorial shield to avoid interstate obligations that have been voluntarily assumed", especially considering that Assurance created the marketing scheme it

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

used to drive traffic to its website and target consumers in California, including Plaintiff.  *See Deckers Outdoor Corp. v. Merz*, 2010 U.S. Dist. LEXIS 153445, *8-9 (C.D. Cal. 2010) (citing *Burger King Corp.*, 471 U.S. at 473-74)*; see also Zippo Mfg. Co. v. Zippo Dot.Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Penn. 1997) ("Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper . . .  Different results should not be reached simply because business is conducted over the Internet.") This shows a "substantial connection" with the forum to support jurisdiction. *Deckers Outdoor Corp*, 2010 U.S. Dist. LEXIS 153445, *8-10 ("So long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction.")

Assurance touts the highly interactive nature of its website, which "uses advanced data analytics to enable an extensive network of live agents to offer customized solutions for more people across a broader socio-economic spectrum."[6] This requires Assurance to determine the *location* of the consumer when she is considering whether to purchase an insurance quote because Assurance must provide services tailored to the jurisdiction in which the consumer resides. [*See* Plaintiff's RJN, Ex. 2]. Assurance and its wholly-owned subsidiary also track the leads and referrals generated through their advertising efforts, which implicitly acknowledges that they have the ability to monitor the efficacy of the various "click campaigns" through affiliate tracking numbers contained in the hyperlinks sent in the emails to California recipients. [*See* Lorge Decl. ¶¶ 14, 15, 20]. Assurance's marketing subsidiary then used this tracking data to compensate its marketing agents based on their performance and Assurance knowingly retained the benefit of the advertising. Defendant also acknowledges that it obtained at least three "leads" located in California as a result of the publisher

---

[6] *See* Plaintiff's RJN, Ex. 3, 4.

1   who sent the emails to Plaintiff. [*See* Lorge Decl. ¶¶ 14-15, 20].

2       In *Metropolitan Life Ins. Co. v. Neaves*, an Alabama resident was subject to

3   personal jurisdiction in California on the basis of a letter she sent to an insurance

4   company representing that she was entitled to an insurance payment even though

5   the payment belonged to a California resident. 912 F.2d 1062, 1065 (9th Cir.

6   1990). The court concluded that by sending the letter, the defendant was

7   purposefully defrauding a California resident, thereby subjecting herself to

8   personal jurisdiction in California. *Id.*

9       In *Decker Coal Co. v. Commonwealth Edison Co.*, the court found

10  purposeful availment where the defendant and plaintiff engaged in a contract

11  outside the forum that required the plaintiff to deliver goods to the forum. 805 F.2d

12  834 (9th Cir. 1986). In contrast, in *Cybersell, Inc. v. Cybersell, Inc.*, the court

13  found no purposeful availment where the defendant did not engage in commercial

14  activity with forum residents via its website, did not encourage forum residents to

15  access its website, and where no forum, state resident signed up for its services.

16  130 F.3d 414, 418 (9th Cir. 1997) (dispositive issue for determing whether

17  personal jurisdiction existed was whether defendant had conducted online sales

18  with state residents). Here, unlike in *Cybersell*, Assurance *does* engage in

19  substantial advertising and commercial activity with forum residents via email and

20  its website, and actively markets its website to encourage residents to access it and

21  sign up for services. Assurance admits that it even obtained at least three leads

22  from the publisher of the emails Plaintiff received. [Lorge Decl. ¶¶ 14-15, 20].

23      Thus, Assurance has purposefully availed itself by engaging in commercial

24  transactions with California residents or delivering services to California. *See*

25  *Cybersell, Inc.*, 130 F.3d at 418; *Decker Coal Co.*, 805 F.2d at 840. Additionally,

26  Assurance, through its marketing agents and deceptive email marketing, took

27  actions that intended to deceive a California resident, which also may satisfy

28  personal availment. *See Metropolitan Life Insurance*, 912 F.2d at 1065.

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

Therefore, Assurance configured its highly interactive website to be able to interact with consumers in the forum they reside and offer them insurance and financial services, clearly showing that Assurance knowingly directed its advertising and accepted the benefit of marketing to California by reaching into California's markets through the emails Plaintiff and members of the proposed class received in order to sell its services. Assurance, in concert and cooperation with its wholly-owned subsidiary and marketing agents, advertised to Plaintiff through the deceptive emails at issue, which redirected to Assurance's website and solicited Plaintiff's business in California, thereby invoking the benefits and protections of the forum such that equity dictates that Assurance cannot now claim that assertion of personal jurisdiction would be unreasonable or that it does not knowingly advertise and solicit business in California.

### 3. *Plaintiff's Claims Arise Directly Out of Assurance's Contacts in California*

The claims at issue must arise out of Defendants' forum-related activities. "A lawsuit arises out of a defendant's contacts with a forum state if there is a direct nexus between the claims being asserted and the defendant's activities in the forum." *Bancroft*, 858 F. Supp. 2d at 1090. The Ninth Circuit essentially follows a "but for test" in making this determination. *Id.*; *see also Baden Sports, Inc.*, 2007 U.S. Dist. LEXIS 3881, *13-14. This test is satisfied if the plaintiff would not have been injured but for the defendant's contacts with the forum. *See Deckers Outdoor Corp.*, 2010 U.S. Dist. LEXIS 153445, *11-12; *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

Here, Plaintiff's claims are directly premised on the emails Plaintiff received in violation of Section 17529.5 in which Assurance advertised its services to Plaintiff. Had Assurance not directed its agents to market its website to Plaintiff and other consumers through the emails at issue, Plaintiff would not have received the deceptive emails and Assurance would not have received

increased website traffic. Moreover, Plaintiff did have direct contact with Assurance through the unsolicited commercial email advertisement she received because the email she received at her California email address contained a hyperlink, which redirected to one of Assurance's websites at *MedicarePlan.com* when Plaintiff clicked on the hyperlink from her computer in California. [FAC ¶¶ 24, 25, 44-45; Plaintiff's RJN, Ex. 6].

Therefore, jurisdiction over Assurance exists because this Action arises directly from Assurance's purposeful conduct in California and harm done in California through the deceptive and unsolicited email advertising at issue.

### 4. *Assurance Has Failed To Meet Its Burden to Show That Jurisdiction Would Be Unreasonable*

After plaintiff has made a *prima facie* showing of the first two prongs of specific jurisdiction, it is Assurance's burden to make a "compelling case" that exercising jurisdiction over it would be unreasonable. *See Weakley v. Redline Recovery Services, LLC,* 723 F. Supp. 2d. 1341, 1334–1335 (S.D. Cal. 2010); *see also Bancroft*, 858 F. Supp. 2d at 1091. Requiring Defendant to defend this action in California will <u>not</u> make litigation "so gravely difficult and inconvenient" that Assurance will be at an "unfair disadvantage." *See Burger King Corp.*, 471 U.S. 462, 478 (1985); *see also Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1199 (9th Cir. 1988); *Baden Sports, Inc.,* 2007 U.S. Dist. LEXIS 3881, *15. In making this assessment, the court is guided by the following factors: (a) the burden on the defendant; (b) the forum State's interest in adjudicating the dispute; (c) the plaintiff's interest in obtaining convenient and effective relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several States in furthering fundamental substantive social policies. *Id*.

Here, Assurance has failed to meet its burden and demonstrate a "compelling case" that exercise of jurisdiction in California would be

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

1   unreasonable. Assurance prematurely attempts to address class issues at this stage

2   of the litigation claims that "industry standard" and Assurance's intentionally

3   cryptic marketing apparatus allows it to evade jurisdiction in California, thereby

4   requiring any plaintiff who wishes to vindicate her rights under California law

5   must to adjudicate in a Washington court.

6       Assurance knowingly conducts business in California, directs advertising

7   activities in the forum, including through the acts of its agents, and Assurance

8   solicited the business of Plaintiff and California consumers; thus, it should come as

9   no surprise that Assurance may be sued in California for the unlawful marketing.

10  Moreover, any burden on Assurance is further minimized by its regular dealings

11  with California consumers and the forum's markets. *See Baden Sports, Inc.*, 2007

12  U.S. Dist. LEXIS 3881, *15.

13      Assurance's burden does not outweigh California and Plaintiff's interests in

14  the litigation, especially considering the disparity in resources between the parties

15  since Assurance was purchased by its parent company, Prudential, for $2.35 billion

16  less than a year ago. [Plaintiff's RJN, Ex. 3, 4]. California has an interest in the

17  litigation because Assurance and its agents reached into the forum's markets to

18  solicit business from directly from California consumers through the deceptive

19  emails, Plaintiff and the class are located in California, and California courts are in

20  the best position to interpret California law and have the strongest interest in the

21  litigation. Therefore, Assurance has failed to demonstrate that the exercise of

22  jurisdiction would "render justice unreasonable" and that the burden of litigating

23  this Action will be so great as to constitute a deprivation of due process.

24  **C.   ALTERNATIVELY, THE COURT SHOULD NOT DISMISS ASSURANCE AND**
    **SHOULD ALLOW PLAINTIFF TO CONDUCT JURISDICTIONAL DISCOVERY**
25  **REGARDING ASSURANCE'S CONTACTS WITH CALIFORNIA**

26      If this Court finds there are insufficient facts to establish general or specific

27  jurisdiction, Plaintiff respectfully requests for limited discovery as to the

28

jurisdictional issues. Jurisdictional discovery is appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008); *see Durward v. One Techs. LLC*, 2:19-cv-06371-GW-AGRx (S.D. Cal. Dec. 19, 2019) (ECF No. 43, p. 4 of 5).

The declarations provided by Assurance raise more questions than they answer. Assurance presents limited information regarding a single publisher, which fails to provide critical information, such as how many California consumers Assurance solicited and engaged in ongoing business relationships related to the distribution of emails in which Assurance advertised its websites. Assurance also omits critical information regarding its wholly-owned marketing subsidiary, National Family Assurance Group LLC, and the relationship between and among Assurance, its parent and subsidiary, and the advertising agency with whom they contracted, Sphere Digital LLC, and the advertising publisher, Pacific Business Link Ltd. Further, Plaintiff requests discovery regarding Assurance's relationship to Prudential as a wholly owned subsidiary and to what extent Assurance is conducting business as its parent's agent and for its parent's benefit. [*See* Plaintiff's RJN, Ex. 3, 4].

Plaintiff should be allowed jurisdictional discovery to ascertain the extent of Assurance's advertising efforts in California to fully evaluate the "continuous and systematic" nature of Assurance's marketing through commercial email. Moreover, Plaintiff requests discovery regarding the registration of the website on which it advertised, *MedicarePlan.com*, in order to determine the true extent of Assurance's sustained and targeted marketing efforts in California through its websites and how many California consumers Assurance obtains as a result of the deceptive email marketing Plaintiff and California consumers receive. *See E360 Insight, LLC*, 2007 U.S. Dist. LEXIS 57695, *15-16. Without this information, Plaintiff and the Court cannot fully evaluate Assurance and its marketing agents'

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT D1
COSTA MESA, CA 92626

contacts with Plaintiff and California. Therefore, the Court should deny Assurance's motion to dismiss, or in the alternative allow Plaintiff to conduct limited discovery on the jurisdictional issues.

**D.   ALTERNATIVELY, THE COURT SHOULD NOT DISMISS ASSURANCE AND SHOULD TOLL ANY APPLICABLE STATUTE OF LIMITATIONS TO ALLOW PLAINTIFF TO TRANSFER THIS MATTER TO THE STATE OF WASHINGTON**

Assurance does not challenge personal jurisdiction in the State of Washington. [Dkt. No. 9, Assurance's Notice of Motion and Motion to Dismiss ("MTD") at p. 3]. Moreover, Plaintiff's lead counsel, Abbas Kazerounian (Washington Bar No. 43133), is licensed to practice law in all state and federal courts in Washington. Thus, should the Court grant Assurance's motion, Plaintiff respectfully requests that the applicable statute of limitations be tolled in order to preserve Plaintiff's claims and allow the Action to be transferred to the State of Washington.

**V.   CONCLUSION**

Therefore, because this Court may exercise personal jurisdiction over Assurance, Plaintiff respectfully requests that this Court deny Assurance's Motion to Dismiss in its entirety. In the alternative, if the Court grants Assurance's Motion, Plaintiff requests jurisdictional discovery regarding Assurance's contacts with California. Moreover, if the Court grants Assurance's motion, Plaintiff requests that any applicable statute of limitations be tolled so the Action may be transferred to the State of Washington.

Dated: March 23, 2020                     Respectfully submitted,

                                          **KAZEROUNI LAW GROUP, APC**

                                      By:  *    /s/ Clark R. Conforti    *
                                            CLARK R. CONFORTI, ESQ.
                                            *Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC
245 FISCHER AVENUE, UNIT DI
COSTA MESA, CA 92626